## NEZWORSKI *v.* MAZANEC.

1. NEGLIGENCE—RESTAURANT—SAFE CONDITION OF PREMISES FOR PATRONS OF PART OF BUILDING.

   A tenant of a portion of a building in which he kept a restaurant and tavern is liable for injuries resulting from his negligence in failing to exercise reasonable and ordinary care to maintain and keep such portion under his control and possession in safe condition for use by his patrons.

2. SAME—DEFECTIVE PREMISES.

   Generally liability for an injury due to defective premises ordinarily dépends upon power to prevent the injury and therefore rests primarily upon him who has control and possession.

3. SAME—STOREKEEPERS—CUSTOMERS.

   The fact that the store proprietor is a lessee in no way lessens his duty of keeping the premises reasonably safe for his customers.

4. SAME—TITLE—POSSESSION.

   A person is liable for an injury resulting from his negligence in respect of a place or instrumentality in his control or possession even though not the owner thereof as liability for negligence does not depend upon title.

5. SAME—WARNING AS TO LATENT OR CONCEALED DEFECTS—INVITEES.

   An owner or occupant of lands or buildings who directly or by implication invites or induces others to go upon the land or in the buildings owes to such persons the duty to have the premises in a reasonably safe condition and to give warning of latent or concealed perils and defects.

6. SAME—TENANT'S CONTROL OF PREMISES.

   In action for damages by patron of restaurant and tavern against proprietor thereof for injuries sustained when she fell down an unlighted stairway at 11:30 p.m. after she went through a doorway from room, used by defendant's patrons, to cross a cement platform leading both to the basement and to an alley, which doorway extended beyond the edge of the plat-

---

Rules controlling when business visitor is on part of premises not held open for business purposes, see 2 Restatement, Torts, § 343 and comment (b) cited at page 60 of the court's opinion.

Liability of possessor of land to business visitor, see 2 Restatement, Torts, § 343 and comment (a) distinguishing liability to trespasser, gratuitous licensee and invitee.

When jury declares standard of conduct to which plaintiff must conform to be free from contributory negligence, see 2 Restatement, Torts, § 475 and § 285, comment (d).

form and about four inches over the first step descending to the basement so placed as to be shadowed from light in room from which plaintiff left by door through which she had seen others pass that evening, conflicting testimony presented question of fact for jury as to defendant's right to control that part of building where plaintiff's accident occurred.

7. Same—Invitees—Trespassers—Question for Jury—Evidence.
   In action by member of a prearranged Christmas party held at defendant's restaurant and tavern on Christmas eve, where evidence shows that plaintiff and other members were invitees in defendant's place of business and testimony presented a question of fact as to whether plaintiff was an invitee or trespasser on portion of premises where accident occurred, such question was properly submitted to jury and evidence supported its finding that plaintiff was an invitee and not a trespasser.

8. Same—Trespasser—Licensee—Invitee—Status a Question for Jury.
   In case evidence is conflicting or inconclusive as to whether plaintiff in action for negligent injuries suffered while present on premises owned or in possession of defendant was present as trespasser, licensee, or invitee, it is for the jury to determine the status of plaintiff and whether defendant exercised toward him the degree of care to which plaintiff was entitled under such status.

9. Same—Implied Invitation—Definition.
   An implied invitation is one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the premises is consistent with the intentions and purposes of the owner or occupant and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest.

10. Same—Invitees—Evidence.
    In order to occupy the status of invitee a plaintiff must show that there was some act or conduct of the owner or occupant which afforded a reasonable basis for plaintiff's belief he occupied such status, implication of an invitation being made manifest from dedication, customary use, enticement, allurement, or inducement to enter either by arrangement of the premises or conduct of defendant.

11. SAME—TENANT'S DUTY TOWARD INVITEES—STAIRWAYS.
Tenant of building in control of portion thereof where plaintiff's injuries were sustained owed plaintiff, as an invitee, a duty to use reasonable and ordinary care to keep the premises in safe condition and to provide a warning at night as to hidden danger in connection with platform between room used by defendant's patrons and outside door and stairway leading off platform to basement.

12. SAME—VERDICTS—HIDDEN DANGER—WARNING.
In action by invitee of restaurant and tavern proprietor for injuries sustained when she fell down an unlighted stairway at night, evidence *held,* to justify finding by jury that defendant was guilty of negligence in failing to warn plaintiff of the hidden danger present.

13. SAME—CONTRIBUTORY NEGLIGENCE—PUBLIC AND SEMIPUBLIC PLACES.
One going about in public places or semipublic places when possessed of his natural faculties may not escape being charged with negligence if he is heedless of his own safety, and if he fails to use the care that an ordinarily careful person would have used in like surroundings, and in consequence sustains injury, he must bear his own misfortune.

14. SAME—INVITEES—UNSAFE CONDITION—WARNING—CONTRIBUTORY NEGLIGENCE.
Since an invitee is not under obligation, as a matter of law, to look for an unsafe condition of portion of premises which she had seen used by others and as to which, though unsafe, there was no notice or warning, plaintiff invitee was not guilty of contributory negligence in failing to look out for danger when there was no reason to apprehend it.

15. SAME—LOOKING OUT FOR DANGER—CONTRIBUTORY NEGLIGENCE.
It is not contributory negligence not to look out for danger when there is no reason to apprehend any.

16. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—STEPPING FROM LIGHTED ROOM ONTO PARTIALLY SHADOWED PLATFORM.
Question of contributory negligence of plaintiff who, in order to reach an outside door of defendant's restaurant and tavern, stepped from lighted room at night through doorway upon platform partially shadowed and which was not as wide as doorway, and first step down was also in shadow, being a question upon which reasonable men might honestly reach different conclusions, was properly presented to jury.

17. DAMAGES—SKULL FRACTURES—HOSPITALIZATION—HEARING.

Verdict of $4,000 *held*, not excessive, in action for damages wherein it is shown plaintiff, then 20 years and 6 months of age, suffered two skull fractures, was confined many weeks in the hospital and at home, had not fully recovered from injuries at time of trial over 14 months later, hearing was affected, and she suffered some loss of memory and mental deterioration resulting from brain injury.

18. SAME—PERSONAL INJURIES.

There is no absolute standard by which the amount of damages in personal injury cases can be measured and the amount allowed for pain and suffering must rest in the sound judgment of the trier of the facts.

19. SAME—EXCESSIVE VERDICTS.

Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive.

20. APPEAL AND ERROR—VERDICTS AND FINDINGS—PREJUDICE—SYMPATHY.

The Supreme Court does not usually substitute its judgment for that of a jury in a personal injury action unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy.

21. SAME—INSTRUCTIONS—REQUESTS TO CHARGE.

Claimed errors in court's instructions to jury would not entitle a defeated litigant to a new trial where record indicates his written requests to charge were given verbatim and court's charge, considered as a whole, covered defendant's belated oral requests to charge, made after court had completed its instructions to the jury (Court Rule No. 37, § 9[1933]).

22. SAME—ADMISSION OF EVIDENCE—PERSONAL INJURY CASE.

Claimed error in admission of immaterial, and exclusion of material, evidence in personal injury case *held*, not reversible.

23. SAME—VERDICTS—PREPONDERANCE OF THE EVIDENCE.

Verdict for plaintiff in personal injury case was not contrary to the preponderance of the evidence.

Appeal from Gogebic; Landers (Thomas J.), J. Submitted October 17, 1941. (Docket No. 63, Calendar No. 41,623.) Decided March 17, 1942.

Case by Gladys A. Nezworski against Bernard C. Mazanec for damages for personal injuries sustained

by falling down a stairway. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*W. F. Pellow* (*S. W. Patek,* of counsel), for plaintiff.

*Charles M. Humphrey* and *Charles M. Humphrey, Jr.,* for defendant.

Starr, J. This case involves plaintiff's claim for injuries sustained about 11:30 o'clock Christmas eve, December 24, 1938, when she fell down a cement stairway leading to the basement of defendant's restaurant and tavern in the city of Bessemer.

Plaintiff began suit October 7, 1939, alleging, in substance, that her injuries were caused by defendant's negligence in maintaining a concrete platform, doorway, and basement stairway in a dangerous condition, in failing to light said platform and stairway properly, and in failing to warn plaintiff of such dangerous condition. Defendant filed answer generally denying plaintiff's charges of negligence and alleging contributory negligence and other defenses hereinafter discussed.

The case was tried before a jury in March, 1940. At the conclusion of plaintiff's proofs defendant moved for directed verdict. The court denied such motion, stating:

"As in all motions for a direction of verdict, the evidence must be construed in a light most favorable to the plaintiff, and the court feels the evidence is such that the minds of reasonable men might disagree as to the negligence of the defendant and as to the contributory negligence of the plaintiff; for that reason I feel it is a question of fact for the jury to decide and the motion will be denied."

At the conclusion of all proofs defendant renewed his motion for directed verdict, and such motion was again denied. The jury returned verdict of $4,000 for plaintiff, on which judgment was entered. Motion for new trial was denied; and defendant appeals.

Defendant contends, in substance, that he did not have control of that part of the premises where the accident occurred and, therefore, is not liable for plaintiff's injuries; that plaintiff, at the time and place of her accident, was not an invitee, but was a trespasser to whom he owed no duty; that plaintiff was guilty of contributory negligence as a matter of law; that the verdict is grossly excessive; that the court erred in its charge to the jury and in failing to give requested charges; that the verdict is contrary to the preponderance of the evidence; and that the court erred in not granting defendant's motion for new trial.

To present an understandable picture of the circumstances of plaintiff's accident, we must describe defendant's restaurant and tavern premises in considerable detail. Such premises, located on the east side of South Sophie street, consisted, in part, of a large front room on the ground floor, referred to by defendant as the "restaurant," an adjoining small room in the rear, which we will refer to as the "rear" room, a kitchen, cement stairway, and basement. Such rear room was 14 feet long, north and south, and 9 feet 10 inches wide, east and west. A door, 6 feet 10 inches by 2 feet 10 inches, with clear opening of 2 feet 9 inches, was located in the south wall of the rear room near the southeast corner, the east jamb of the door being 7 inches from the east wall of the room. Such door, which swung to the north into the rear room, opened onto an inclosed

cement platform or "stair landing." The platform was 5 feet 2 inches long, north and south, and 3 feet 1 inch wide, east and west. On the east side of the platform was a door, which bolted on the inside, leading to the alley in the rear of defendant's premises. On the west side of the platform was an open cement stairway, of the same width as the platform, which led into the basement. The west edge of such platform was about 4 inches east of the west side of the doorway leading from the rear room; that is, the door extended about 4 inches further west than the platform. There was a steel edging or angle nosing of about 1¼ inches on the west edge of the platform and also on the edge of each step of the stairway. The stairway had an iron handrail on the north side, but there was no rail on the south side. The platform was an inch or two lower than the floor of the rear room, and the threshold of the connecting door was about 2 inches higher than the floor of the rear room. An architect, who prepared a sketch of the premises, testified, in part, regarding the platform, stairway, and lighting, as follows:

"It appears to me that this stairway leading to the basement is what is usually known as a hatchway; in other words probably a few years ago, that hatchway was covered with doors and later they built a shed. The hatchway is constructed of concrete and the hatchway is south of the private dining (rear) room. * * *

"*Q.* Now, having in mind the doorway leading to the concrete platform on the south side and having in mind the concrete platform, as well, state whether or not the concrete platform is narrower than the doorway which leads into it.

"*A.* It is.

"*Q.* How much narrower?

"*A.* Four inches. * * *

"*Q.* Having this doorstop in mind, how much shorter is the concrete platform than the doorway—how much narrower is the concrete platform than the doorway?

. "*A.* East and west?

"*Q.* On the westerly side of the concrete platform? * * *

"*A.* The difference between the width of the platform and the door is 4 inches; in other words, the door overlaps the first riser by 4 inches."

There was an electric light located in the stairway which lighted both the platform and stairway, but the testimony indicates such light was not turned on at the time of plaintiff's accident. An electric light fixture was located in approximately the center of the ceiling of the rear room and, when the door in the south wall was open, the light from such fixture, striking through the doorway at an angle, illuminated the cement platform, except the westerly few inches, which were shadowed. The above-mentioned architect testified further:

"*Q.* Now, when you turned the light (in the rear room) on, just before you got to the door leading to the stairway, you could see the steps, couldn't you?

"*A.* I turned the lights on, yes, and you could see the platform but you could not see the (stairway) steps.

"*Q.* From the private dining (rear) room?

"*A.* Indeed not.

"*Q.* When you got to the door, when the door was open?

"*A.* You can't see the steps when you open the door."

Defendant had occupied the premises, which he rented under oral lease on a month-to-month basis, for about five years. There had been no change in

the construction of the rear room, platform, or stairway during his occupancy. He had made daily use of the platform and stairway, and used the basement for storage of draught beer.

On Christmas eve plaintiff, then 20 years 6 months old, was one of a group of young people having a prearranged Christmas party in defendant's restaurant and tavern. Plaintiff arrived with a girl friend about 11 o'clock. Other members of the party had arrived earlier. They had brought presents for each other and were having a good time. They were using both the front and rear rooms of defendant's premises. Defendant testified that "patrons were invited not only to use the front portion of the restaurant, but also invited to use this inner rear room." Several witnesses testified that the door in the south wall of the rear room, leading to the platform and alley, was open part of the time during the evening; that during the evening several of the young people went through such door onto the platform and out into the alley. Defendant testified that the door was not locked; that he had never been given a key for it; and that the door was kept shut by a knife inserted in the door jamb. Plaintiff and other patrons were not notified against using the south door of the rear room or the platform which led to the alley and basement. There were no notices or warning signs regarding the condition and use of the doorway, platform, alley, or stairway.

Plaintiff testified, in substance, that she was sitting in the rear room; that it became hot and stuffy, and that she decided to go into the alley for fresh air; that the door leading onto the platform and to the alley was open. She testified further that she stepped over the threshold of the door with her right foot; that the front part, the ball of her foot, landed

on the cement platform and the back part of her foot was over the west edge of the platform, causing her to lose her balance and fall backward down the cement stairway. She sustained two skull fractures and other injuries which necessitated hospital confinement for several weeks and thereafter confinement at home. There was testimony that at the time of the trial, more than a year after the accident occurred, plaintiff had not entirely recovered from her injuries. Plaintiff testified, in part, regarding her accident, as follows:

"*Q.* Will you explain to the jury just how you had this accident?

"*A.* I stepped over the threshold; I saw the platform and I put my foot down and I felt just the front part of my foot on the edge of the platform—the back part was over space, my heel, and I lost my balance and went down the steps backwards. * * *

"*Q.* Now, why were you going—why did you have occasion to use this particular passageway at the time—what were you going to do?

"*A.* I was going to go out for a little while to get a breath of fresh air.

"*Q.* What was the condition of the atmosphere in this rear inner room?

"*A.* It was very stuffy and I was very warm. * * *

"*Q.* Do you recall seeing other people going outside through the rear exit that evening?

"*A.* Yes. * * *

"*Q.* The night of the accident were you familiar with these premises?

"*A.* No, I wasn't.

"*Q.* Now, was the light in the stairway lighted?

"*A.* No, it wasn't. * * *

"*Q.* Just before you were about to go outside, state whether or not the door on the south wall of the rear inner room was open.

"*A.* It was open.

"*Q.* What lights, if any, lighted up this concrete platform?

"*A.* The light from the rear room. * * *

"*Q.* As you proceeded to step over the threshold and walk out onto the concrete platform, did you look where you were going?

"*A.* Yes.

"*Q.* And what did you see?

"*A.* I saw the light on the platform; beyond that it was darkness towards the west. * * *

"*Q.* Could you see the west edge of the platform?

"*A.* No, I couldn't.

"*Q.* Why couldn't you see it?

"*A.* Because there was a shadow on it. * * *

"*Q.* What caused you to fall down the stairway?

"*A.* I couldn't see the edge of the platform. * * *

"*Q.* Why couldn't you see the west edge of the platform?

"*A.* Because it was hidden by a shadow.

"*Q.* What caused this shadow?

"*A.* The shining of that light from the inner (rear) room past the edge of the door.

"*Q.* What caused you to fall down the stairway?

"*A.* The platform wasn't as wide as I thought it would be.

"No one pushed me down the stairway. When I fell, I was going out in the alley and intended to use the rear exit door. * * *

"*Q.* Your right foot stepped right into the place where you thought was a shadow?

"*A.* Where I thought the platform was. * * *

"*Q.* But the platform wasn't there, was it, where you stepped with your right foot?

"*A.* Half of it was; the front part of my foot was on the platform. * * *

"*Q.* No—but you looked and that part of the platform was not lighted because of this shadow

and you just took it for granted that the platform extended out there and you stepped right onto it?

"*A.* I thought the platform should be at least as wide as the door.

"*Q.* You thought it should be and you took it for granted it was?

"*A.* Yes. * * *

"*Q.* That portion of this concrete platform which the front part of your foot stepped on, was that lighted up? * * *

"*A.* Yes, it was.

"*Q.* And you could see that?

"*A.* Yes, I could. * * *

"*Q.* Well, how much of it (platform) was dark?

"*A.* The edge of the platform.

"*Q.* How much?

"*A.* That metal strip on the edge was in the shadow. * * *

"*Q.* Do you know whether you went over that threshold, going onto the platform, in the center of the doorway or on the side?

"*A.* At the side.

"*Q.* At the right side of the doorway?

"*A.* Yes.

"*Q.* Right up close to the right casing?

"*A.* Quite close."

Plaintiff testified she did not drink any intoxicating liquor during the evening of her accident, and her testimony was supported by another witness who had been present at the Christmas party. Two doctors who examined plaintiff soon after the accident testified, in substance, that they did not smell or detect liquor on her breath. However, one young man of the party who testified he did not see plaintiff drink any intoxicating liquor said that she was "partially" intoxicated. This same young man, who said he was a "pretty good friend" of defendant, testified further that the door leading from the

rear room to the platform and alley was open; that he saw plaintiff go through the door; that after plaintiff was out "two or three minutes at the most" he heard her scream; that he stepped through the doorway and "saw her (plaintiff) falling and grabbed for her," but failed to save her and fell down the stairway with her; that he was "bruised and shaken up." Plaintiff testified that at the time of her accident she did not know this young man fell down the stairway. Other witnesses testified that they did not see this young man at the bottom of the stairway after the accident.

Defendant contends that he did not have control of the platform, doorway, stairway, and basement and, therefore, is not liable for plaintiff's injuries, occasioned by his alleged negligent maintenance and operation of the premises.

There is a sharp conflict between the testimony of defendant and the owner of the property as to who had control of that part of the premises where the accident occurred; that is, the doorway, platform, and stairway. Defendant testified, in substance, that, when he rented the premises, the owner gave him keys to only the front door; that he never had a key to the door leading from the rear room to the platform and that he kept such door closed by inserting a knife in the jamb; that the owner of the building and her janitors used the platform, the doorway into the alley, and the stairway for the purpose of removing ashes from the basements of other business places in the building; that the owner stored screen doors in defendant's basement; and that the owner had control of that part of the premises where the accident occurred. The owner denied using defendant's stairway, the platform, and alley door, and denied exercising any control whatever over defendant's premises. Defendant testified that soon after

the accident the owner placed a padlock on the door leading from the rear room onto the platform, but the owner testified that defendant placed such padlock on the door. Defendant admitted that, when he rented the premises, he understood that he "was to have the use of" the basement.

If defendant as lessee had control and possession of the premises, he is liable for injuries resulting from his negligence in failing to exercise reasonable and ordinary care to maintain and keep said premises in safe condition for use by his patrons.

"It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and therefore rests primarily upon him who has control and possession. *Banningan* v. *Woodbury,* 158 Mich. 206 (133 Am. St. Rep. 371)." *Dombrowski* v. *Gorecki,* 291 Mich. 678, 681.

"The fact that the store proprietor is a lessee in no way lessens his duty of keeping the premises reasonably safe for his customers." 33 A. L. R. 196.

"Liability for negligence does not depend upon title; a person is liable for an injury resulting from his negligence in respect of a place or instrumentality which is in his control and possession, even though he is not the owner thereof." 45 C. J. p. 881.

The law is well established that a tenant in control of leased premises is liable for an injury occasioned by reason of his negligently permitting the premises to be in an unsafe condition. In 32 Am. Jur. pp. 696, 697, it is stated:

"It is a settled principle of law that an owner or occupant of lands or buildings who directly or by implication invites or induces others to go upon the land or in buildings owes to such persons the duty

to have the premises in a reasonably safe condition and to give warning of latent or concealed perils and defects, and there is nothing in the relation of landlord and tenant which changes this rule. At common law, a tenant in full and complete control of premises which he occupies owes the same duty to persons coming there in the course of business or upon his invitation express or implied to keep such premises in a reasonably safe condition as he would if he were the owner, and is prima facie liable for damages proximately caused by defects in or dangers on the premises that reasonably could have been avoided by appropriate care taken by him, irrespective of whose duty it was, as between landlord and tenant, to make such repairs. Such invitees when seeking redress for injuries sustained by them by reason of defects in the premises must seek such redress from the tenant and not from the landlord, in the absence, at least, of any statutory provision making the landlord liable. The proprietor of a public place of business—a merchant or a shopkeeper—is bound to keep such premises and the passageways to and from it in a safe condition and use ordinary care to avoid accident or injury to those entering his premises on business, and the fact that such proprietor is a lessee in no way lessens his duty of thus keeping the premises reasonably safe for his customers. It is the duty of the tenant, in the first instance, to see that the building and its approaches are safe for those coming there by his invitation, express or implied, and if he negligently permits the building or the access to it to be in an unsafe condition, he is liable for an injury occasioned thereby to such persons. The duty of keeping premises intended for public amusement or resort in a reasonably safe condition for those patronizing them attaches to the lessee of such premises.''

The conflicting testimony as to whether or not defendant had control of the premises presented a

question of fact for the jury. There was evidence from which the jury could reasonably find that defendant had control of that part of the premises where plaintiff's accident occurred.

Defendant further contends that plaintiff, at the time and place of her injury, was not an invitee, but was a trespasser to whom he owed no duty. The testimony established that plaintiff and other members of the Christmas party were invitees in defendant's restaurant and tavern. The question is, whether plaintiff was an invitee or a trespasser when she went through the doorway in the rear room and upon the cement platform leading to the alley. The testimony presented a question of fact as to whether plaintiff was an invitee or trespasser; and such question was properly submitted to the jury for their determination. In *Schmidt* v. *Michigan Coal & Mining Co.,* 159 Mich. 308, 311, we said:

"There is abundant authority to sustain the contention that where there is evidence, though contradicted, from which an invitation might be inferred, it is a question for the jury. *Pelton* v. *Schmidt,* 104 Mich. 345 (53 Am. St. Rep. 462); 21 Am. & Eng. Enc. Law (2d Ed.), p. 472; *Mallock* v. *Derby,* 190 Mass. 208 (76 N. E. 721); *Banderob* v. *Railway Co.,* 133 Wis. 249 (113 N. W. 738)."

See, also, *Perl* v. *Cohodas, Peterson, Paoli, Nast Co.,* 295 Mich. 325; *Brown* v. *Railway Co.,* 202 Mich. 280; *Wieghmink* v. *Harrington,* 274 Mich. 409.

"Inasmuch as the owner's duty of care toward trespassers, licensees, and persons on the premises by invitation, varies, the status of the party injured is often in issue, and, in such cases, where the evidence is conflicting or inconclusive, it is for the jury to determine into which class plaintiff falls, and whether defendant exercised toward him the

degree of care to which, under the law, he was entitled.'' 45 C. J. p. 1327.

In the present case plaintiff and other members of the party were using the rear room, and defendant was serving them there. The door leading from such room onto the platform and to the alley was not locked and was open at least a part of the time during the evening. Members of the party used such doorway and platform for egress into the alley. There were no notices or warning signs against using such doorway, platform, and alley. The doorway was open when plaintiff decided to go outside for fresh air. There was evidence from which it could reasonably be inferred that defendant, in spite of his denials, must have been aware that the doorway and platform were being used for exit to the alley. The circumstances were such that plaintiff could reasonably presume that she had the same right as others to use the door, platform, and alley. The rule as to what constitutes an implied invitation to use premises is stated in 45 C. J. pp. 809, 810, as follows:

''An implied invitation is one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest. * * * In order to occupy the status of invitee, he must show that there was some act or conduct of the owner or occupant which afforded a reasonable basis for such belief. An invitation may be implied from dedication, customary use, or enticement, allurement, or inducement to enter. It may be manifested by

the arrangement of the premises or the conduct of the owner.''

See, also, 2 Restatement of the Law of Torts, § 343-b, p. 942; 42 A. L. R. 1098; 20 A. L. R. 1147; Bohlen's Studies in the Law of Torts, p. 199 (footnote).

A careful examination of the record satisfies us that there was testimony from which the jury could reasonably find that plaintiff, when using the doorway and platform leading to the alley, was an invitee, and not a trespasser.

Defendant, being in control of the premises, owed plaintiff as an invitee a duty to use reasonable and ordinary care to keep the premises in safe condition. In *Perl* v. *Cohodas, Peterson, Paoli, Nast Co., supra,* p. 333, we said:

''What was defendant's duty to plaintiff, assuming that plaintiff was an invitee? It was to use the care that an ordinarily careful and prudent person would use under the same or similar circumstances to avoid causing injury to plaintiff or to the public generally.''

See, also, *Coleman* v. *Washington Theatre Co.,* 294 Mich. 343; *Engel* v. *Smith,* 82 Mich. 1 (21 Am. St. Rep. 549); *Filipowicz* v. *S. S. Kresge Co.,* 281 Mich. 90; *Shorkey* v. *Great A. & P. Tea Co.,* 259 Mich. 450; *Great A. & P. Tea Co.* v. *McLarvy* (C.C.A.), 71 Fed. (2d) 396; *Branch* v. *Klatt,* 165 Mich. 666; 20 R. C. L. p. 55; 32 Am. Jur. p. 697; 45 C. J. p. 882.

Plaintiff was not familiar with the construction of the platform and stairway. At the time of her accident the light located in the stairway, which illuminated both the platform and stairway, was not turned on. The doorway leading from the rear room extended beyond the west edge of the platform. The light from the rear room did not illuminate the west

edge of the platform and the stairway. Defendant was chargeable with knowledge of the condition of the premises. If there were hidden dangers in connection with the doorway, platform, stairway, and alley, it was his duty to give warning thereof. In *Samuelson* v. *Cleveland Iron Mining Company,* 49 Mich. 164, 170 (43 Am. Rep. 456), Mr. Justice Cooley said:

"Every man who expressly or by implication invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and of which they are not aware."

"If there are hidden dangers upon the premises he (defendant) must use ordinary care to give warning thereof. While the rule has been applied in innumerable situations, it has been invoked most frequently, perhaps, in the case of injuries from * * * unprotected stairways, hatchways, trap doors. * * * The facts of the particular case are, of course, controlling upon the question of negligence, and the decision thereon is properly within the sphere of the jury." 20 R. C. L. p. 56.

"The fact that the premises were maintained in a somewhat darkened condition might have given added assurance of its being reasonably safe. * * *

"The question of whether or not the place where plaintiff fell was properly lighted was a question for the jury. * * *

"The question of defendant's negligence and of plaintiff's freedom from contributory negligence were questions of fact for the determination of the jury." *Coleman* v. *Washington Theatre Co., supra,* pp. 345, 346.

In the instant case there was testimony which justified the jury's finding defendant guilty of negligence.

Defendant further contends that plaintiff was guilty of contributory negligence as a matter of law. We recognize the rule established in this State as expressed in the case of *Blankertz* v. *Mack & Co.*, 263 Mich. 527, 533, as follows:

"This court is definitely committed to the holding that one going about in public places or semipublic places when possessed of his natural faculties may not escape being charged with negligence if he is heedless of his own safety. If he fails to use the care that an ordinarily careful person would have used in like surroundings, and in consequence sustains injury, he must bear his own misfortune. *Bedell* v. *Berkey*, 76 Mich. 435 (15 Am. St. Rep. 370); *Shorkey* v. *Great A. & P. Tea Co.*, 259 Mich. 450; *Garrett* v. *W. S. Butterfield Theatres, Inc.*, 261 Mich. 262; *Boyle* v. *Preketes*, 262 Mich. 629; *Grand Rapids Bedding Co.* v. *Grand Rapids Furniture Temple Co.*, 218 Mich. 486; *Rice* v. *Goodspeed Real Estate Co.*, 254 Mich. 49."

The question is: Did plaintiff use the care and caution that an ordinarily careful and prudent person would have used under like circumstances?

Plaintiff had observed others using the doorway, platform, and alley exit during the evening; there was no notice or warning against using the doorway and platform leading to the alley; the door leading to the platform was open; the light in the stairway was not turned on; the light from the rear room, striking through the doorway at an angle, illuminated the platform, except the westerly edge thereof; the westerly edge of the platform and the first step of the stairway were shadowed; the west side of the platform was about 4 inches narrower than the doorway. From the testimony it is apparent that plaintiff, in stepping through the doorway with her right foot near the right side of the door, might miss the platform.

Plaintiff was not under obligation, as a matter of law, to look for an unsafe condition of the platform. She was not guilty of contributory negligence in failing to look out for danger where there was no reason to apprehend danger. In *Hulett* v. *Great A. & P. Tea Co.,* 299. Mich. 59, 68, we said:

"Plaintiff could not be said, as a matter of law, to be under obligation to look for an unsafe condition of the floor. Negligence will not be imputed to plaintiff for failing to look out for danger if, under the surrounding circumstances, she had no reason to suspect that such danger was to be apprehended. *Lawrence* v. *Bartling & Dull Co.,* 255 Mich. 580; *Corey* v. *Hartel,* 216 Mich. 675; * * * Baldwin, Personal Injuries (2d Ed.), p. 138, § 146."

In the case of *Engel* v. *Smith, supra,* p. 7, we said:

"It is a sound rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any."

See, also, *Johnson* v. *City of Pontiac,* 276 Mich. 103; *Grant* v. *Richardson,* 276 Mich. 151; *Standard Oil Co.* v. *Burleson* (C. C. A.), 117 Fed. (2d) 412.

The question of plaintiff's contributory negligence was, under the testimony presented, a question on which the minds of reasonable men might honestly reach different conclusions. From a careful examination of the entire record we cannot say that plaintiff was guilty of contributory negligence as a matter of law. The question of her negligence was properly presented to the jury.

Defendant contends further that the verdict of $4,000 was grossly excessive. We cannot agree with such contention. Plaintiff sustained two skull fractures and was confined many weeks in the hospital and at home. The testimony of physicians, who examined plaintiff shortly before the trial, indicated that she had not fully recovered from her injuries;

that her hearing was affected; that she showed signs of incoordination of movement; that she showed symptoms of loss of memory and mental deterioration resulting from brain injury. In the recent case of *Cleven* v. *Griffin,* 298 Mich. 139, Mr. Justice BOYLES said:

"No claim is made that the verdict was obtained by improper methods, prejudice or sympathy. There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed for pain and suffering must rest in the sound judgment of the triers of the facts. * * * Courts are reluctant to disturb verdicts of juries for personal injuries on the ground that the amount is excessive. * * * We do not usually substitute our judgment for that of the jury unless the verdict shocks the conscience or has been secured by improper means, prejudice or sympathy."

See, also, *Watrous* v. *Conor,* 266 Mich. 397; *Michaels* v. *Smith,* 240 Mich. 671; *Sebring* v. *Mawby,* 251 Mich. 628; *Cawood* v. *Earl Paige & Co.,* 239 Mich. 485; *Weil* v. *Longyear,* 263 Mich. 22; *Campbell* v. *Brown,* 276 Mich. 449; *Meyer* v. *Weimaster,* 278 Mich. 370.

Defendant contends that he is entitled to a new trial because of errors in the trial court's instructions to the jury. Such instructions must be considered in their entirety and, in the absence of requests by defendant for further or more specific instructions, we cannot say there was reversible error. Court Rule No. 37, § 9 (1933), provides, in part:

"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested."

See *In re Einfeldt's Estate,* 286 Mich. 537; *People* v. *Petrosky,* 286 Mich. 397; *Grzelka* v. *Chevrolet*

*Motor Car Co.,* 286 Mich. 141; *Moss* v. *Shreve,* 278 Mich. 665.

The record indicates that defendant's written requests to charge were given verbatim to the jury. When the court had completed its instructions, the following colloquy occurred between court and counsel for defendant:

"*Court:* I believe I have covered all the law and the requests as given me by counsel. * * *

" (To counsel.) Any suggestions, gentlemen?

"*Mr. Humphrey:* Defendant suggests that the jury be instructed as to the duty owed by the defendant to the plaintiff if it should be found that the landlord or landlady had control of the premises; also the duty the defendant owes to the plaintiff as a trespasser.

"*The Court:* Have you written requests on those, Mr. Humphrey?

"*Mr. Humphrey:* No, I haven't, your Honor.

"*The Court:* Coming at this late time, I am not going to give them; I think they are covered in the general charge. Any other general suggestions?

"*Mr. Humphrey:* No."

Defendant argues that the trial court erred in refusing to give such orally requested instruction. We believe the court's charge to the jury, when considered in its entirety, covered the instruction orally and belatedly requested by defendant. The court's failure to give such instruction was not reversible error.

Defendant further contends that the court erred in admitting immaterial, and in excluding material, evidence. We find no reversible error in the admission or exclusion of evidence.

There was testimony from which the jury could reasonably find defendant guilty of negligence and plaintiff free of contributory negligence. The verdict was not contrary to the preponderance of the evidence.

Judgment is affirmed, with costs to plaintiff.

CHANDLER, C. J., and BOYLES, NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., concurred in the result.