CAVANAGH, J.
(dissenting). While I agree with the general principles expressed in Justice Hathaway’s dissent, I write separately to elaborate on my disagreement with the majority. Today’s majority opinion builds on the so-called “special aspects” doctrine by holding that “effectively unavoidable” means that the injured person must have been “compelled by extenuating circumstances with no choice but to traverse a previously unknown risk.” Ante at 473. Because the open- and-obvious doctrine has been interpreted as establishing a no-duty rule,[1] and because the majority erroneously decided in Lugo v Ameritech Corp, Inc, 464 Mich 512; 629 NW2d 384 (2001), that the special-aspects doctrine defines the sole exception to the open- and-obvious doctrine, today’s majority opinion means that only when those unexplained extenuating circumstances arise and force a person to confront an open and obvious hazard does the premises possessor suddenly acquire a duty to address the dangerous condition. Thus, the majority further narrows the exceptions to the open-and-obvious doctrine to the very rarest of situations, without elaborating on when those *483 extenuating circumstances may arise. This ill-wrought departure from our precedent immunizes premises possessors from nearly all liability arising out of their breaches of a long-recognized duty. Because the majority’s relentless redefining and narrowing of the exceptions to the open-and-obvious doctrine will inevitably work to the harm of those who choose to reside in or visit Michigan, I respectfully dissent.
I. THE MAJORITY OPINION IS INCONSISTENT WITH OUR PRECEDENTS AND THE RESTATEMENT OF TORTS
I agree with Justice HATHAWAY that the majority opinion represents yet another unwarranted departure from our longstanding and well-reasoned precedents, which have historically relied on the Restatement of the Law of Torts. See, e.g., Riddle v McLouth Steel Prod Corp, 440 Mich 85, 92-94; 485 NW2d 676 (1992); Ackerberg v Muskegon Osteopathic Hosp, 366 Mich 596, 599-600; 115 NW2d 290 (1962). Based on our traditional adherence to the Restatement, it is well established in our jurisprudence that an invitor owes a legal duty “ ‘to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land’ that the landowner knows or should know the invitees will not discover, realize, or protect themselves against.” Bertrand v Alan Ford, Inc, 449 Mich 606, 609; 537 NW2d 185 (1995), quoting Williams v Cunningham Drug Stores, Inc, 429 Mich 495, 499; 418 NW2d 381 (1988), citing 2 Restatement Torts, 2d, § 343, pp 215-216. The invitor’s duty includes the “duty to exercise reasonable care to diminish the hazards of ice and snow accumulation” by taking “reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.” Quinlivan v Great Atlantic & Pacific Tea Co, Inc, 395 Mich 244, 261; 235 NW2d 732 *484 (1975). The sound rationale underlying this rule is that liability for injuries caused by failures to maintain property in a safe condition should rest on the person in control of the property because he or she is in the best position to prevent the injury. Nezworski v Mazanec, 301 Mich 43, 56; 2 NW2d 912 (1942).
The open-and-obvious doctrine, however, balances the invitor’s duty to diminish the hazard of injury with the need for invitees to exercise a reasonable degree of personal responsibility for their own safety. Thus, it has been said that an invitor generally “ ‘owes no duty to protect or warn the invitee’ ” of dangers that are “ ‘known to the invitee or are so obvious that the invitee might reasonably be expected to discover them ....’” Mann v Shusteric Enterprises, Inc, 470 Mich 320, 339; 683 NW2d 573 (2004) (CAVANAGH, J., concurring in part and dissenting in part), quoting Riddle, 440 Mich at 96.[2]
*485 In turn, however, the Restatement approach recognizes exceptions to the open-and-obvious doctrine. Particularly relevant to this case is 2 Restatement Torts, 2d, § 343A(1), p 218, which provides that a possessor of land is not relieved of the duty to protect or warn of known or obvious dangers if “the possessor should anticipate the harm despite such knowledge or obviousness.” The comments on § 343A(1) state, in pertinent part:
There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm. [Id. at § 343A(1) comment f, p 220 (emphasis added).]
In Lugo, however, the majority created its special-aspects test — relying solely on the special aspects of a condition that may make it unreasonably dangerous— and began the systematic rewriting of Michigan premises-liability law in a way that narrows the exceptions to the open-and-obvious doctrine. Lugo, 464 Mich at 518-520.[3] As I noted in Lugo, the exceptions to the *486 open-and-obvious doctrine cannot “be simply summarized in terms of whether ‘special aspects’ of a condition make the risk of harm unreasonably dangerous.” Id. at 527 (CAVANAGH, J., concurring). Rather, while the “special aspects of a particular condition may be relevant to a determination whether liability should be imposed . . ., consideration of special aspects should be made in the context of the Restatement test.” Id. at 542; see, also, Mann, 470 Mich at 336 (CAVANAGH, J., concurring in part and dissenting in part) (“I remain committed to the view that the majority’s singular [special aspects] approach is wrong and inconsistent with Michigan’s premises liability jurisprudence.”).
In discussing whether a special aspect makes a condition unreasonably dangerous, the Lugo majority gave the example of a puddle of water covering the floor in front of the only available exit to a building. Lugo, 464 Mich at 518.[4] Because a customer wishing to leave the store must cross the water, the majority noted that the condition was “effectively unavoidable.” Id.[5]
*487 In the years since Lugo, there has been considerable debate about what would make a condition effectively unavoidable, and some jurists have interpreted “effectively unavoidable” as being synonymous with “effectively trapped.” See Joyce v Rubin, 249 Mich App 231, 242; 642 NW2d 360 (2002); Robertson v Blue Water Oil Co, 268 Mich App 588, 594; 708 NW2d 749 (2005); Preston v Loving Care Flowers, Inc, unpublished opinion per curiam of the Court of Appeals, issued December 13, 2011 (Docket No. 301241), p 2. Indeed, in this case the Lanctoes argued that plaintiff was not effectively trapped because she was trying to enter — not exit — the fitness club.
Today, the majority continues to dismantle the Restatement approach by holding that “effectively unavoidable” means that the injured person must have been “compelled by extenuating circumstances with no choice but to traverse a previously unknown risk.” Ante at 473. In other words, “effectively unavoidable” means absolutely unavoidable: the individual must have no alternative but to hazard the danger. Thus, there is essentially nothing left of the premises possessor’s historical duty to clear ice and snow or the exceptions to the open-and-obvious doctrine because it will be incredibly rare that an injured person will be able to show that they were “absolutely compelled” to encounter an open and obvious danger. I find today’s holding to be repugnant to the traditional jurisprudence of this Court and a grave disservice to Michigan’s citizens and visitors.
II. THE MAJORITY OPINION CREATES AN ILLOGICAL AND UNWORKABLE STANDARD
While the majority seems to be attempting to settle the confusion about the meaning of “effectively unavoidable,” the new definition merely continues the *488 narrowing of the traditional exceptions to the open-and-obvious doctrine by creating an illogical and unworkable standard. This is so because, from this point forward, a premises possessor’s duty to warn of or protect against an open and obvious hazard will arise only at the moment an individual is “compelled by extenuating circumstances with no choice but to traverse a previously unknown risk.” Ante at 473.[6] In other words, an invitor’s duty no longer requires the invitor to prospectively anticipate whether harm will occur, despite the hazard’s open and obvious nature. See Restatement, § 343A(1), p 218. Indeed, the duty will not even arise until some extenuating circumstance— like a fire inside a building necessitating evacuation— forces individuals to choose between the harms of traversing versus not traversing the risk.[7] Such a rule is nonsensical because it imposes the duty on premises possessors when it will generally be too late to do anything to address the hazard. Essentially, at the moment the building catches on fire the premises possessor would acquire the duty to run outside and salt the visibly slippery sidewalk he or she chose to ignore earlier that morning.
*489 In contrast to the majority’s position, the Restatement approach is far more workable and logical. It requires the premises possessor to take steps to address the hazard when the premises possessor should anticipate that individuals will be exposed to harm from the risk, despite its open and obvious nature. A patch of icy sidewalk blocking the only entrance to a fitness club is a perfect example. If the premises possessor expects patrons to enter the business he or she holds open to the public, the premises possessor should expect that they will confront the hazard despite its open and obvious nature.
Indeed, the Restatement provides an example in which a person is injured after falling on a visibly “slippery waxed stairway” that provides the sole access point to the person’s office and “[h]er only alternative to taking the risk was to forgo her employment.” Restatement, § 343A(1), illustration 5, p 221. In that illustration, the premises possessor did not escape liability merely because the hazard was open and obvious. Thus, the Restatement approach requires the premises possessor to take steps to address the hazard at a time when he or she can prevent the harm — not after some unforeseen and unforeseeable extenuating circumstances arise. Unlike the majority’s new definition of “effectively unavoidable,” the Restatement approach is prospective — requiring the premises possessor to reasonably anticipate probable harms — not retrospective and arising after the fact.
Unlike the special-aspects test, the Restatement approach serves well the citizens of Michigan who live in a climate that is, as the majority tutors, “prone to winter.” Ante at 454. It is precisely because Michigan experiences wintry conditions that premises possessors have a duty to take reasonable measures within a *490 reasonable time to address the hazards of ice and snow. Indeed, such a rule would make no sense in a climate that does not experience winter. The premises possessor — not the person who must go about his or her daily business during the winter — is in the best position to remedy hazardous conditions on the premises. Nezworski, 301 Mich at 56.[8]
III. THE MAJORITY FAILS TO ADEQUATELY EXPLAIN ITS NEW STANDARD
Through a smattering of iterations, the majority instructs that the invitee must be “compelled by extenuating circumstances with no choice but to traverse a previously unknown risk,” ante at 473, “inescapably required to confront under the circumstances,” “unavoidably compelled,” ante at 456, “required or compelled to confront a dangerous hazard,” ante at 469, and “forced to confront the risk,” ante at 473, but fails to provide guidance about what types of circumstances would suffice. Specifically, the majority fails to state whether these extenuating circumstances must arise externally to and independent of the invitee or whether the extenuating circumstances of the particular individual suffice. Further, the majority opinion offers no guidance about whether it matters if an invitee is entering or exiting a property.
Presumably, a fire or a rampant gunman in a building would constitute extenuating circumstances sufficient to force the fleeing occupants to hazard a known or obvious risk. In that case, because they are exiting *491 the building, they would be trapped by a patch of ice blocking the only exit.[9] As I noted, however, it makes no sense to say that the premises possessor’s duty arises when the shots ring out or the building bursts into flames, and I do not see how a premises possessor could ever anticipate such extenuating circumstances. While the majority opinion reiterates that “issues arising in application of the open and obvious doctrine are to be decided using an objective standard .. .,” ante at 478 n 51, this statement fails to provide guidance on the extenuating circumstances that may be subjectively particular to an individual, yet would objectively compel a reasonable person under the same circumstances to confront an open and obvious hazard. For example, consider the situation of a person suffering a severe medical emergency who is confronted with an icy patch blocking the sole entrance to the hospital emergency room or an individual who must suddenly enter or exit a building to come to the aid of a family member suffering a medical emergency. What about a probationer who must hazard the icy patch blocking the sole entrance to a drug-testing center in order to avoid violating his or her probation? In that case the probationer must weigh the risk of crossing against the risk of violating probation and going to jail. In each of these examples, the extenuating circumstance is specific to the individual — and therefore subjective — yet a reasonable person in that same situation would feel compelled to traverse the known or obvious hazard.
*492 While I could provide endless examples of objective and subjective extenuating circumstances that would force a person to choose between braving or avoiding a hazard, my point is that the majority’s new definition of “effectively unavoidable” only confuses the matter more and pushes our law further from the Restatement and our own precedent. It also shifts the focus from the objective nature of the hazardous condition to the subjective choice an invitee must make when deciding to cross or not cross the hazard. Courts and practitioners will struggle with these thorny questions in the wake of today’s opinion, none of which would arise if we were to return to the Restatement approach.
Contrary to the majority’s assertion, I do not “posit a regime whereby premises owners would become virtual insurers to those who enter their property.” Ante at 480. This statement would only be true if one assumes that in every premises-liability case that reaches a jury, the jury automatically decides in favor of the injured invitee. Rather, I have confidence in our jury system and a jury’s ability to rationally decide a case under the law.[10] *493 Were this case to survive summary disposition, the jury might very well find that the Lanctoes did not breach the standard of care because they took reasonable measures within a reasonable time to address the icy condition on the sidewalk, or that although there was a breach of the duty, that breach was not the proximate cause of the harm to plaintiff.[11] I merely posit an approach that is consistent with the pre-Lugo jurisprudence of this Court and would allow a premises possess- or’s ultimate liability in a case such as this to be decided by a jury of Michigan’s citizens.
IV APPLICATION
Under the Restatement approach and this Court’s historical jurisprudence, I would hold that the Court of Appeals did not err when it affirmed the trial court’s ruling that summary disposition was not appropriate in regard to defendants Richard and Lori Lanctoe. Fitness Xpress was a health club held open to the general public, and plaintiff was invited to make use of the facility. The Lanctoes had a duty to clear the ice and snow hazard in front of the only entrance to the facility, and plaintiff had the reciprocal right to expect that reasonable care would be taken to make safe the only approach available to invitees wishing to make use of the facility. Despite the open and obvious nature of the hazard and the fact that plaintiff knew of the risk, the *494 Lanctoes should have anticipated that all customers entering the facility through the sole approach to the front door would be at risk of injury.
V CONCLUSION
Today’s majority opinion creates an illogical and unworkable rule that will serve only to bar the courthouse doors to Michigan’s injured invitees. Rather than clarifying the law, the majority opinion creates a host of unanswered questions that will create confusion as courts and practitioners attempt to find the answers. Further, by reducing the invitor’s duty to the very rarest of situations involving extenuating circumstances, the majority opinion also reduces the beneficial incentives for Michigan’s business owners to take reasonable measures to protect against ice and snow hazards on their property. I would return this Court’s jurisprudence to that of the Restatement. Accordingly, I respectfully dissent.
Marilyn Kelly, J., concurred with Cavanagh, J.

 As explained in footnote 2 of this opinion, I question whether all questions related to the open-and-obvious doctrine should be characterized as relating to the duty of the premises possessor rather than to the standard of care.

 I will accept, but only for purposes of this dissent, that questions related to the open-and-obvious doctrine relate to the premises possess- or’s duty. As my previous positions indicate, however, questions about the openness and obviousness of a hazard might be better designated as related to the standard of care. See Lugo, 464 Mich at 531-541 (Cavanagh, J., concurring); Riddle, 440 Mich at 118-122 (LEVIN, J., dissenting).
I will not attempt to resolve this issue here because what matters is that Michigan courts currently consider the open-and-obvious doctrine to be solely a question of duty. See Lugo, 464 Mich at 516 (Taylor, J.). This case, however, shows the danger of classifying all questions related to the open-and-obvious doctrine as questions of duty because doing so removes questions of fact from the jury’s consideration and encourages courts to grant summary disposition to defendants when there may be genuine issues of material fact concerning whether a danger is open and obvious and, if so, whether the premises possessor still had a duty to address the hazard because the premises possessor should have anticipated the harm. Indeed, the majority’s entire special-aspects test was created to provide a framework for courts deciding defendants’ motions for summary disposition. See id. at 524-525 (“[W]e believe that this ‘special aspects’ inquiry serves to concretely focus trial courts on the showing that must be made in evaluating motions for summary disposition in this context.”).

 The Lugo majority erroneously seized on Bertrand’s use of the term “special aspects” to describe some aspect of a stairway that made it unreasonably dangerous, despite the hazard being open and obvious. It was never my intention that this simple term would be used in a later case to form the basis for an increasingly narrow test designed to apply to all exceptions to the open-and-obvious doctrine. As I stated in Lugo:
[W]hile “special aspects” may be considered in determining whether liability should be suspended, the existence or absence of special aspects in a particular case will not necessarily be outcome determinative. Instead, pursuant to the Restatement, courts must focus on whether an unreasonable danger is presented, whether *486 harm should be anticipated, and whether the duty of care has been breached. [Lugo, 464 Mich at 543 (CAVANAGH, J., concurring).]

 The majority opinion repeats that “neither a common condition nor an avoidable condition is uniquely dangerous.” Ante at 463. This seems inconsistent with Lugo’s example of a puddle of water blocking the only exit to a building as being effectively unavoidable. Puddles of water in front of exits are common in Michigan as patrons track snow in when entering a building. It seems that if a mere puddle of water can be uniquely dangerous, then an icy patch of sidewalk is doubly so. Yet both are common conditions.

 The majority also provided the example of “an unguarded thirty foot deep pit in the middle of a parking lot” as an open and obvious hazard that was unreasonably dangerous because it bore the “special aspect” of imposing “an unreasonably high risk of severe harm.” Lugo, 464 Mich at 518. The instant case relates only to Lugo’s “effectively unavoidable” illustration because, in order to enter the health club, plaintiff had to cross a patch of visible snow and ice on the sidewalk adjacent to the only entrance to the facility.

 As discussed in this opinion, the open-and-obvious doctrine has been interpreted as a no-duty rule. Thus, in the context of visible hazards blocking the only available ingress or egress, the new rule could be stated as follows: The invitor owes no duty to warn of or protect against an open and obvious hazard unless the invitee is compelled by extenuating circumstances with no choice but to traverse a previously unknown risk.

 The majority’s new rule thus shifts the focus from the nature of the condition to the choice made by the injured person who was absolutely compelled to confront the hazard. This seems inconsistent with Lugo’s statement that courts are to remain focused on the nature of the hazard. Lugo, 464 Mich at 523-524 (“Accordingly, it is important for courts in deciding summary disposition motions by premises possessors in ‘open and obvious’ cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff.”).

 See, also, Restatement, § 343A(2), comment g, p 221 (noting that “the fact that premises have been held open to the visitor, and that he has been invited to use them, is always a factor to be considered, as offering some assurance to the invitee that the place has been prepared for his reception, and that reasonable care has been used to make it safe”).

 Although at least one iteration of the majority’s new rule would also seem to require that the risk be “previously unknown.” Ante at 473. Whether the risk was actually known or should have been known because it was open and obvious, the majority opinion makes it clear that effective unavoidability means that the injured person had no choice but to hazard the risk. If one has no choice but to cross the hazard, I cannot see why it matters whether he or she previously knew of the risk or not.

 Despite its professions of adherence to the law, the only “predictability” the majority seeks to add to the law is the certainty of summary disposition for defendants in open-and-obvious cases. As I have pointed out, a premises possessor has little chance of predicting the possible extenuating circumstances that might arise and force an individual to choose between the risks of crossing a hazard versus the risks of not crossing. However, a premises possessor can predict with relative ease that invitees will proceed to encounter even an open and obvious hazard when it is blocking the only available entrance to the invitor’s business.
Further, I have not espoused a position that would require a landowner to keep his or her property in perfect condition at all times for all people. See ante at 481 n 56. Reasonableness — not perfection — is the standard by which a premises possessor’s duty is measured. And while I appreciate the majority’s introduction of Archbishop of Canterbury John Morton’s infamous medieval fork, a Morton’s Fork is a choice between two equally unpleasant alternatives. I do not think that asking a premises possessor to cast about a little Morton’s Salt to make the only *493 approach to a business reasonably safe qualifies as an equally unpleasant alternative to potential liability for injuries. Rather than being a negative alternative, the premises possessor’s duty is a beneficial, protective measure imposed to lessen the possibility of injuring invitees and, hence, to avoid the imposition of liability.

 Deposition testimony indicates plaintiff suffered a fractured T12 vertebra that required surgery, persistent nerve damage, and long-term pain.