MOORE *v.* TRAVERSE CITY MASONIC BUILDING
ASSOCIATION.

1. LANDLORD AND TENANT—OPEN, UNLIGHTED, UNGUARDED COAL-
HOLE AT NIGHT—NEGLIGENCE.

Where it appears that one of two doors protecting a coalhole
and weighing 95 pounds was open, unlighted, and unguarded
at 7 p. m. early in March and there is evidence showing that
it had been open at 5 p. m., but was then closed for at least
a half hour, parties who found door or doors open thereafter
never informed defendant landlord of store and lodge build-
ing and it had no occasion to anticipate a third party would
open the door, plaintiff failed to prove the door was open
a sufficient length of time before the accident to charge de-
fendant with knowledge of such fact.

2. NEGLIGENCE—RES IPSA LOQUITUR.

The doctrine of *res ipsa loquitur* is not followed in this State.

SHARPE, C. J., and CARR, J., dissenting.

Appeal from Grand Traverse; Pugsley (Earl C.),
J., presiding. Submitted January 14, 1949. (Docket
No. 83, Calendar No. 44,321.) Decided April 11,
1949. Rehearing May 18, 1949.

Separate actions of case by Leon A. Moore and
Bernice F. Moore against the Traverse City Masonic
Building Association, a Michigan corporation, to
recover damages sustained when Bernice F. Moore

REFERENCES FOR POINTS IN HEADNOTES

[1] Liability for injury by stepping or falling into opening in
sidewalk while doors were open or cover off. 70 A.L.R. 1358.
[2] *Res ipsa loquitur* as applicable to injury due to coalhole or
other opening in street or sidewalk. 174 A.L.R. 607.
[2] 38 Am. Jur., Negligence, § 295.

fell through hole on defendant's property. Verdicts and judgments for plaintiffs. Defendant appeals. Reversed and remanded for entry of judgments for defendant.

*Robert B. Murchie,* for plaintiffs.

*Charles H. Menmuir,* for defendant.

Sharpe, C. J. (*dissenting*). This is an appeal from judgments entered for plaintiffs growing out of personal injuries sustained by Bernice F. Moore, wife of Leon A. Moore.

On March 5, 1945, defendant, the Traverse City Masonic Building Association, owned a lot upon which was erected a four-story lodge and office building at the southeast corner of Front and Union streets in Traverse City, Michigan. The main entrance to the building was on Front street. The ground floor was rented to a drugstore, hardware store and barbershop. The drugstore was leased to plaintiff Leon A. Moore and was in the northwest corner of the building. The barbershop was in the southwest corner and the hardware store covered the east side of the building. On the south end of the lot there was a separate building leased to a restaurant. The restaurant was approximately 23 feet from the south wall of the lodge building. Part of this open space was covered with a cement walk 9 feet 10 inches in width running along the south wall of the lodge building. On this walk were the back doors of the barbershop and hardware store. There was no back door on this walk for the drugstore which had a side entrance on Union street.

In this sidewalk about 15 feet east of Union street and about 4 feet north of the south edge of the walk, there was a rectangular coal opening covered with two steel doors, each of which weighed 95

pounds and was 19 inches in width by 52 inches in length.  The coal doors were entirely on the private property of defendant and about 15 feet from the nearest city sidewalk.  The walk was used by customers who entered the back doors of the building in question and by tenants and could be used by persons going to the rear of other stores in the block.

Plaintiff Leon A. Moore had for many years been in the habit of parking his car in the south portion of the open space between the lodge building and the restaurant just off Union street.  Mr. Moore did not pay for parking privileges and the space was not reserved for him.

On the night in question, the light on the walk at the rear of the lodge building was turned off.  Plaintiff Leon A. Moore accompanied by plaintiff Bernice F. Moore, at about the hour of 7 or 7:15 p.m., were on their way to a local bowling alley to see Mr. Moore's team bowl.  They intended to park their car in its usual place but found the space occupied, so they drove around the block, came through the alley and turned north in back of the restaurant and parked in a different space in a position east of the usual parking place with the car headed west towards Union street.

Mrs. Moore alighted from the car, walked over to the walk in question and watched for the curb.  She mounted the curb and as she walked westerly in the dark, fell through the coalhole, the east door of which was open.  She fell several feet into a coal-bin and was knocked unconscious.  She remained unconscious for about three days, suffered a fracture of the seventh and eighth ribs, a chip fracture off the top edge of the left hip bone, bruises, lacerations and shock.  She was taken to the hospital where she remained 10 days and was in bed at home for a time after her dismissal from the hospital.

At the time of the trial she was 53 years of age and complained of double vision and nervousness. The bills paid by Leon A. Moore were as follows: Doctors $137, hospital $107.50, medical and nursing $430, and other expenses $480.79; the total of which was $1,155.29.

The cause came on for trial before the court and a jury. At the close of plaintiffs' proofs, a motion for a directed verdict was made by defendant's counsel on the grounds that:

"1. Plaintiffs have not proven the defendant to be guilty of actionable negligence.

"2. Plaintiffs have not established freedom from contributory negligence.

"3. Plaintiff Bernice F. Moore was at the time of the accident a bare licensee, using the private property of the defendant for her convenience, and at her own risk, and the danger of which she complains was only concealed by the darkness of the night, which risk she voluntarily assumed, and the defendant in this case as the owner of the premises in question was under no legal obligation to the plaintiff, Bernice F. Moore, save that it should not knowingly let her run upon a hidden peril or wantonly or wilfully cause her harm.

"4. There is no proof in this case whatsoever that the defendant corporation or its officer or employees knew of or had knowledge of the open coal door, or had ever seen it opened save when in use for the delivery of coal or that the defendant corporation had knowledge of plaintiffs being on the premises at night and after business hours, and this lack of notice as to this defendant bars recovery on the part of the plaintiff.

"5. There is no proof in this case that any act of the defendant was the proximate cause of the injury to the plaintiff, and there is no proof that the defendant corporation or any of its officers or employees left the coal door open on the day of the accident, nor is there any proof that the defendant corpora-

tion knew that the heavy coal door, weighing 95 pounds, had ever been opened by any unauthorized person, and the jury cannot be left to speculate as to the cause of this accident and plaintiff's injuries.

"6. Based upon the pleadings in this case, the corporation which is being sued as the defendant in this case, is a corporation not for pecuniary profit, and as such it cannot be made to respond in damages in a tort action of this nature under the laws of this State.

"7. Plaintiff, Leon A. Moore, is by the provisions of his lease with the defendant, which has been admitted in evidence, barred from recovering any damages in this action on the basis of the record as it now exists."

This motion was denied with a reservation under the Empson act.* The motion was again made at the close of all proofs and again denied.

The jury returned a verdict for Leon A. Moore in the sum of $10,000 for loss of wife's services and expenses. It also returned a verdict for Bernice F. Moore in the sum of $15,000 for pain, suffering, embarrassment and humiliation. Motions for new trial were made by defendant, but denied on condition that remittiturs be filed reducing Leon A. Moore's judgment to $5,000 and Bernice F. Moore's judgment to $10,000. Both remittiturs were filed. It was stipulated that both cases could be tried together in the circuit court and on appeal.

Defendant appeals. The principal questions calling for decision relate to the contributory negligence of plaintiff Bernice F. Moore and the negligence of defendant.

The trial court charged the jury as follows:

"To make negligence the proximate cause of an injury, the injury must be the natural and probable

---

* 4 Comp. Laws 1948, § 691.691 *et seq.* (Stat. Ann. § 27.1461 *et seq.*).—Reporter.

consequence of a negligent act which under the circumstances an ordinary prudent person ought reasonably to have foreseen might probably occur as the result of his negligent act.

"Now, this brings us to the question as to what was the duty of the defendant. I have stated to you the respective claims of the parties. On the subject of what was the duty of the defendant there is a variance, between the claim of the plaintiff and the claim of the defendant, and that imposes upon the court the duty to make a decision with reference to the defendant's duty. In that connection I charge you that it appears from the undisputed evidence that the sidewalk in question along the south side and adjacent to the building of the defendant also extended to the east along the south side and adjacent to other store buildings to the east on March 5, 1945, and for many years prior thereto this walk served as a means of ingress and egress to and from the rear of the barbershop and hardware store in defendant's building, and likewise to some extent from other store buildings to the east. It was used by the tenants of these buildings and by their customers and by the public. That part of the walk which was adjacent to the defendant's building was built and maintained by the defendant. This walk also served as a means of ingress and egress, in part at least, to a portion of the open area to the south of defendant's building, used for automobile parking by the plaintiff, Leon A. Moore, and others, including the tenant in the barbershop in defendant's building. The use and maintenance of the walk in question adjacent to the defendant's property on March 5, 1945, and for years prior thereto, was and had been such as to make it the duty of the defendant to either keep and maintain the same in a reasonable safe condition for those who by implication were invited to use the same, or to close the walk and exclude such persons from using the same. The coal opening in question into which the plaintiff, Bernice F. Moore, fell and was injured, was maintained sole-

ly for the use and benefit of the defendant itself. However, inasmuch as the same was maintained within and as a part of the sidewalk which others by implication had been invited to use, there existed on the part of the defendant at the time of the accident a duty to keep the same in a reasonably safe condition for those who, by such implication, including the plaintiff, were invited to use the walk.

"It is a question, members of the jury, for you to decide in answering the question of whether the defendant is guilty of negligence: Did or did not the defendant discharge its duty in this regard at the time of the accident. I charge you further in this connection that it is well settled that every person who expressly, or by implication, invites another to come upon his premises, thereby assumes to all such persons as accept the invitation, the duty to warn them of any danger in coming upon his premises which he knows or ought to know of, and of which they are not aware.

"From this principle of law it follows that when the defendant for a long period of time prior to the accident kept and maintained a sidewalk at the rear of its building, which was being frequently used by its tenants and others with the defendant's knowledge, that there arose on the part of the defendant a continuing duty to keep the sidewalk, including the doors over the coalhole in question, in a reasonably safe condition, and to warn any persons known to them to be using the sidewalk of any known dangerous places in the sidewalk, if there were any that were not known to the users themselves. Stated in another way, inasmuch as the sidewalk and the opening through which Mrs. Moore fell were maintained by the defendant for the implied use of the public, including the plaintiffs, it then became the duty of the defendant to keep the same in a reasonably safe condition, and to give notice of any latent or concealed perils or dangers, if any such did exist.

"I charge you further, members of the jury, in this connection that it was the duty of the defendant

to keep the walk and the opening covered by the metal doors, and the doors themselves in good repair and in a safe condition and to use such care in so doing as would be expected of an ordinarily prudent person under the same or similar circumstances.

"In that connection it should be further stated that this is the extent of the defendant's liability and duty. That the defendant is not and was not an insurer of the safety of the plaintiff or others who might use the walk or travel over the trap door in question."

Defendant urges that the court was in error in giving the above charge to the jury as said charge portrayed Bernice F. Moore as an implied invitee on the premises when, as a matter of fact, she was only a bare licensee. There is evidence in this case that defendant maintained, repaired, and exercised complete jurisdiction over the walk in question; and that the sidewalk for many years had been used by the tenants of the building, by their customers and by the public with the knowledge and apparent consent of defendant.

In 45 C. J. pp. 809, 810, it is stated:

"An implied invitation is one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest. * * * In order to occupy the status of invitee, he (user) must show that there was some act or conduct of the owner or occupant which afforded a reasonable basis for such belief. An invitation may be implied from dedication, customary use, or enticement, allurement, or inducement to enter. It may be mani-

fested by the arrangement of the premises or the conduct of the owner."

And in 25 A.L.R. p. 1286, it is stated:

"The cases are all agreed that the family of a tenant has the same right of action against the landlord to recover compensation for injuries received in using the means of access or egress to or from the demised premises, or the halls or stairway therein, used in common by different tenants, as the tenant himself would have."

Under the circumstances in this case, there is evidence from which a jury could find that plaintiff Bernice F. Moore was an invitee. It was not error to instruct the jury as above quoted.

In *Keech* v. *Clements,* 303 Mich. 69, we said:

"It is also the rule that one who invites, expressly or by implication, another upon his premises is dutybound to exercise ordinary care and prudence to render the premises reasonably safe for the visit."

In our opinion the contributory negligence of plaintiff Bernice F. Moore presented a question of fact upon which a jury has spoken. We find no reason to disturb such a finding of fact.

It is also urged that plaintiffs failed to prove that any act of defendant was the proximate cause of the accident in that they failed to prove who did open the door through which plaintiff Bernice F. Moore fell. There can be no question that the open hole was *ipso facto* dangerous and if the defendant knew or reasonably should have known of this condition, it was actionable negligence to leave the hole open or unguarded. See *Bradley* v. *Burdick Hotel Co.,* 306 Mich. 600. There is evidence to show that the injury happened between 7 and 8 o'clock in the evening; that one of the trap doors was open between 7 and 8 a.m., and at 5:15 p.m.; that each of the trap

doors weighed 95 pounds; and that the door could have been, but was not securely fastened below. The impossibility of the door being blown open is readily apparent when its weight is considered. While there is no direct testimony that an agent or employee of the defendant opened the trap door and left it open, yet there is a strong inference that it was opened by someone connected with defendant's property. Because of defendant's motion for a directed verdict, we must view the testimony in the light most favorable to plaintiff. In our opinion there was evidence of the defendant having constructive notice of a dangerous condition on its premises and of failure to eliminate the same within a reasonable time. The negligence of defendant presented a factual question for the determination of the jury.

It is also urged that it was error for the court to charge the jury as follows:

"At this point the defendant denies that it can be held liable or responsible in damages for any of these items, first, because it denies any negligence, and second, because it did not have notice or ample time to remedy the situation complained of. That the plaintiffs were trespassers or mere licensees upon the property of the defendant, and further that the plaintiff, Mrs. Moore, was herself guilty of contributory negligence which bars her right to recover in this case."

It appears that in its requests to charge, the defendant submitted the following:

"The defendant in this case was under no obligation to furnish lights and railings to guide and protect a mere licensee or trespasser in the use of its private property and it owed the plaintiff no duty except the negative one of not doing anything to injure her if it knew of her presence there, for a mere licensee must take the premises as she finds them

and the owner is not liable for a danger that is only concealed by the darkness of night."

It is to be noted that the charge given was substantially the same as requested by defendant. Under these circumstances it is too late to withdraw an accepted invitation.

It is also urged that the court was in error in giving the following instruction to the jury:

"Now, members of the jury, if under the facts and under the law as I have tried to explain it to you, you reach the conclusion that the plaintiff has failed to establish by a preponderance of the evidence any liability on the part of the defendants, then your deliberations are at an end, and you will return to this courtroom with a verdict in both cases of no cause for action. If, on the other hand, you reach a conclusion that the defendant was guilty of negligence that was a proximate cause of this accident, and that Mrs. Moore was free from any contributory negligence, then you approach what may be defined as the second part of this case, namely, a consideration of damages."

Prior to giving the above instruction, the court instructed the jury as follows:

"I charge you, members of the jury, that the burden of proof in this case is upon the plaintiff, or rather the plaintiffs, to establish, first, that there was actionable negligence on the part of the defendant; second, that the plaintiff, Bernice F. Moore, was herself free from any contributory negligence; and third, that the negligence complained of on the part of the defendant was a proximate cause of the accident. These must be established by a preponderance of the evidence. Preponderance of the evidence means that the testimony adduced by one side is more credible and conclusive than that of the other. It does not mean a preponderance in point of the number of witnesses but a preponderance of

facts and circumstances that are convincing. Put in another way, it merely means such evidence as when weighed with that opposed to it has the more convincing force.   *   *   *

"Now, it has been claimed in this case and it is true as a matter of law that the burden is upon the plaintiff to show by a preponderance of the evidence that Mrs. Moore was free from contributory negligence, and that brings us logically to the next inquiry as to what is meant in law by contributory negligence. I advise you that contributory negligence in order to constitute a defense must have been negligence contributing to the injury itself for which the action is brought. It is such act as contributes by direct consent to or participation in the wrong complained of. One cannot recover for an injury caused by another if her own negligence contributed thereto."

Defendant relies upon *Herzberg* v. *Knight,* 289 Mich. 29, and *Socony Vacuum Oil Co.* v. *Marvin,* 313 Mich. 528, in support of its claim that prejudicial error was committed in giving the instruction complained of. These cases announce the rule that plaintiff must establish by a preponderance of the evidence that he was not guilty of contributory negligence. That portion of the charge complained of must be read in connection with other charges previously given. Viewed in that light the charge could not have misled the jury and, consequently, is not reversible error.

It is also urged that the judgments as remitted are excessive. Dr. John G. Beall, a specialist in ophthalmology, testified that he first examined Mrs. Moore on September 11, 1945; that his examination revealed a partial paralysis of the left inferior rectus muscle and showed that the eyes turned in, particularly at rest; and that she also had a cyclophoria, due to the paresis of this muscle, which is a turning in of the image of the eye. Dr. Beall testi-

fied concerning several other examinations and said that he saw her the last time October 27, 1947. He testified that Mrs. Moore in making the normal movements of life will be handicapped by double vision for reading and anything she might do in a downward position; that if she attempted to walk up and down stairs, or from the sidewalk, step down to the pavement or up over a curb, she would have difficulty seeing where she was going. He testified that another factor of double vision was that you lose your depth perception; that you could not judge how far things are away from you accurately. He testified that that would be true in such processes of life as sitting at a table eating; that she would have difficulty when she looked down to see the silverware and food, and would have difficulty in judging the distance when she was bringing it to her mouth; and that that condition would affect her nervous state. He testified that in order to eliminate the double vision she would have to close one eye or cover one eye; that the condition from which she was suffering was permanent; and that she would have it for the rest of her life. Dr. Beall also testified that Mrs. Moore's condition was, in his opinion, probably the result of the accident; that it was possible she may need assistance with her housework and in going about from one place to another; that her activities would necessarily be slowed up and she would have to be careful and cautious in her movements; and that difficulty with her eyes would make it more hazardous for her to do many things, such as going up and down stairs, crossing streets and watching traffic. In view of the history, Dr. Beall testified the most probable cause of her defective vision would be the trauma she received in the accident. Dr. Beall also testified that the defect in Mrs. Moore's vision could not be corrected with glasses.

Mrs. Moore testified:

"*Q.* You say you have a girl in your house now that is doing work for you 1 day a week?

"*A.* That is right.

"*Q.* What do you pay her per day?

"*A.* $5.20.

"*Q.* I understand your testimony that you would have her more often than that but you are unable to get her more than one day?

"*A.* Why sure, I would.

"*Q.* How many days a week would you normally, in view of your condition now, require someone to help you with the house?

"*A.* I could use her about 3 days a week very easily."

Assuming that because of the accident Mrs. Moore needed a girl to do housework 3 days a week for an indefinite period at a cost of $811.20 per year and having in mind the extent of her injuries, we are unable to say that the judgments are excessive. There is no absolute standard by which we can measure the amount of damages in personal injury cases. The amount allowed by the trial court seems reasonable under the circumstances.

The judgments should be affirmed, with costs of both courts.

Carr, J., concurred with Sharpe, C. J.

Reid, J. I do not concur in the opinion written by the Chief Justice.

The accident happened around 7:15 p.m., March 5, 1945. Opening the door was evidently due to the unauthorized act of some third party. Defendant had no occasion to anticipate a third party would open the coal door in question; no trouble of that kind had occurred during all the years that the doors had been in use.

Defendant's janitor Hermel testified that at 5 p.m. of the day in question, he carried out cinders and went right over the doors in question and they were closed. Mr. Neufer, president of defendant, testified he went over the coal doors in question about 5:30 p.m. and the doors were closed at that time. There is no contradiction of the testimony of these two witnesses.

Plaintiff's witnesses who testified as to one or both of the doors being open at some time during the evening in question, never informed defendant of the door or doors being open.

Plaintiff failed to prove that the door in question was open a sufficient length of time before the accident to charge defendant with knowledge that the door was open. See *Gunning* v. *King,* 229 Mass. 177 (118 N. E. 233); *City of Cleveland* v. *Amato,* 123 Ohio St. 575 (176 N. E. 227).

We do not follow the doctrine of *res ipsa loquitur.*

The judgments are reversed. The cases are remanded to the trial court with instructions to set aside the verdicts and enter judgments for defendant. Costs to defendant.

BOYLES, NORTH, DETHMERS, and BUTZEL, JJ., concurred, with REID, J. BUSHNELL, J., concurred in the result.