MUTH *v.* W. P. LAHEY'S, INC.

1. NEGLIGENCE—STORES—INVITEES—EVIDENCE.

Customer in shoe department of a store *held,* an invitee at place and time of accident alleged to be due to defendants' negligence, where it appears she had bought shoes there previously, inquired if her size was among shoes advertised as being on sale, clerks were then busy and 1 of them directed her to look at the shelves on which the shoes were located, since she was engaged in a mission for the benefit of both herself and the store operators.

2. SAME—TRAP DOOR IN STORE AISLE—BARRICADE—WARNING.

Lessee of shoe department of a store was bound by the active negligence of its clerks in leaving a trap door through the floor of an aisle along which shelves containing shoe boxes were located without having any barricades or warning to prevent persons falling through it and then directing plaintiff customer to examine shelves without warning her of the danger.

3. SAME—GENERAL OPERATOR OF DEPARTMENT STORE—LIABILITY FOR DANGEROUS CONDITION OF PREMISES—CONTROL OF LESSEE—QUESTION FOR JURY.

Whether or not defendant general operator of department store was liable for installation and maintenance of a dangerous condition on premises leased to codefendant for conducting shoe department was properly left to jury, where lease provided that lessor agreed to furnish heat, light, janitor and local telephone services, air conditioning and cooling facilities,

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 10–12] 38 Am Jur, Negligence §§ 98, 99, 131 *et seq.*
[1–3, 5, 10–12] Duty and liability respecting condition of store or shop. 33 ALR 181; 43 ALR 866; 46 ALR 1111; 58 ALR 136; 100 ALR 710; 162 ALR 949.
[2] 35 Am Jur, Master and Servant §§ 532 *et seq.*, 565, 566.
[3] 32 Am Jur, Landlord and Tenant §§ 665, 688, 689, 818.
[5–9] 38 Am Jur, Negligence § 174 *et seq.*

sales books and wrapping materials, required advertising to
be carried in general operator's name and receipts to be paid
to it and reserved control over all credit sales and purchases
and the right to decide controversies between the lessee and
its employees and customers and fitness of lessee's employees,
and trap door through which plaintiff fell had been installed
with the general operator's approval.

4. APPEAL AND ERROR—DIRECTED VERDICT—JUDGMENT NOTWITH-
STANDING VERDICT—EVIDENCE.

Testimony must be construed as strongly as possible in favor
of plaintiff on defendant's appeal from denial of motions for
directed verdict and for judgment notwithstanding verdict.

5. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—UNGUARDED TRAP DOOR
—WARNING.

Whether or not plaintiff customer in shoe department was guilty
of contributory negligence was properly left to jury, where
it appears that 1 of the clerks had left a trap door through
the floor of an aisle unguarded and without warning plaintiff
of the danger another clerk had directed plaintiff to search
for her own size of shoes among the stock located on shelves
along the aisle and she fell through the trap door opening while
making such search.

6. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Contributory negligence is ordinarily a question of fact for the
jury, if there is one, unless the evidence so plainly and clearly
establishes such contributory negligence that no reasonable
man could come to any other conclusion.

7. SAME—CONTRIBUTORY NEGLIGENCE.

One in the exercise of ordinary care under all of the circum-
stances is not guilty of contributory negligence.

8. SAME—ORDINARY CARE—QUESTION OF FACT.

What is ordinary care under the circumstances of a case is
usually a question of fact.

9. SAME—DEFINITION OF ORDINARY CARE.

Ordinary care is the care which an ordinarily prudent person
would exercise under the same or similar circumstances.

10. SAME—CONTRIBUTORY NEGLIGENCE—UNGUARDED TRAP DOOR—AN-
TICIPATED DANGER.

Evidence adduced in shoe department customer's action for in-
juries sustained in fall through unguarded trap door open-
ing in aisle where shoes were stored *held*, to have failed to
suggest any possible reason why she should have anticipated

an opening in the floor, hence, negligence will not be imputed to her as a matter of law for her failure to look out for such danger.

11. EVIDENCE—EXPERT ON LIGHTING ARRANGEMENTS—UNGUARDED TRAP DOOR—WARNING.

Testimony of expert on lighting arrangements and visual perception was competent to assist jury in determining issues of negligence and contributory negligence in actions based on injuries received by customer as she fell through unguarded trap door opening in floor of aisle where, without warning of danger, lessee's shoe clerks had directed her to search for shoes on sale which were advertised by defendant lessor and sold by codefendant lessee.

12. NEGLIGENCE — TRIAL — PROPER ISSUES — REIMBURSEMENT OF LESSOR.

Whether or not defendant general operator of store has a right to reimbursement from lessee of shoe department for payment of judgments arising out of injuries to lessee's customer from active negligence of lessee's clerks was not a proper issue in customer's action against such lessor and lessee, hence, trial court was not in error in so holding.

Appeal from Muskegon; Fenlon (Edward H.), J., presiding. Submitted October 8, 1953. (Docket Nos. 38, 39. Calendar Nos. 45,925, 45,926.) Decided December 29, 1953.

Separate actions by Ben Muth and his wife, Mina Muth, against W. P. Lahey's, Inc., a Michigan corporation, and Brummel Shoes, Inc., an Indiana corporation, for damages sustained by wife's fall on premises. Cases consolidated for trial and appeal. Verdicts and judgments for plaintiffs. Defendants appeal. Affirmed.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Thomas W. Finucan,* of counsel), for plaintiffs.

*Mitts, Smith & Haughey,* for defendant W. P. Lahey's, Inc.

*Sessions & Barlow,* for defendant Brummel Shoes, Inc.

Carr, J.    On the 7th of November, 1950, plaintiff
Mina Muth entered the store of W. P. Lahey's, Inc.,
in the city of Muskegon.  After paying a bill she
proceeded to the shoe department, which was at the
time operated by the other defendant, Brummel
Shoes, Inc., pursuant to the provisions of a lease
between defendants that set forth at some length
their respective contractual rights and obligations.
It was Mrs. Muth's intention to purchase a pair of
shoes if she could find what she wanted.  She dis-
covered that the clerks were busy at the time, but
was told by one of them that she might look along
the shelves where the shoes were kept to see if she
could find her size among those that were marked as
being on sale.  She proceeded in accordance with
the suggestion, it being her purpose, if she found a
box marked with her size, to call the attention of a
clerk to it and not to herself remove it from the shelf.

While proceeding along a passageway between
shelves containing shoes and the west wall of the
building, she stepped through an opening in the floor
and fell to the basement, sustaining serious injuries.
Below such opening was a stairway which was used
by employees of the defendants in going to the base-
ment where both had merchandise stored.  It was
covered ordinarily by a trap door, carpeted, as was
the passageway, and of the same width as the space
between the shelves, on which the shoes were placed,
and the wall.  The stairway in question had been
used by an employee of defendant Brummel who had
not taken the trouble to lower the door or to put up
a chain that was evidently intended to be used to
protect the opening.

Mrs. Muth brought suit to recover damages for the
injuries sustained by her, and the other plaintiff, her
husband, also instituted suit for hospital and medi-
cal expenses resulting from such injuries and for
other damages that he had sustained.  The cases

were tried together before a jury. At the conclusion of the plaintiffs' proofs defendants moved for directed verdicts which were taken under advisement. Said motions were renewed at the conclusion of the testimony, and the same action taken. The jury returned a verdict of $12,500 for Mrs. Muth, and $5,786 in favor of her husband. Motions for judgments notwithstanding the verdicts were made, and denied. Both defendants have appealed, asserting that the trial judge was in error in refusing to direct verdicts in their favor, and also that there was prejudicial error in the admission of certain testimony. The appeals in both cases have been submitted on 1 record.

The first question raised by appellants has reference to the status of Mrs. Muth, hereinafter referred to as the plaintiff, at the time she received her injuries. That she was an invitee at the time she entered the store is not open to question, but it is apparently the position of appellants that when she was examining the boxes on the shelves she was merely a licensee. As a witness in her own behalf, plaintiff testified as follows with reference to what occurred when she entered the shoe department of the store:

"*A.* These clerks were busy and I had bought so many shoes there and I asked them—I said, 'You are very busy and I am in a hurry; would you know if you have any shoes to fit me?' They said they thought they had, then I said, 'Then I will wait.' He said, 'Why don't you go back there and look for yourself?' I said, 'Am I allowed back there?', and he said 'Oh, sure that is fine.' I wouldn't say that is the exact words, but to that effect. I said, 'How would I know the shoes that were on sale?' He said they had tags on them, and I proceeded to look. * * *

"*Q.* Do you mean to tell us here you talked to some clerk there and he told you to go and pick your own shoes out?

"*A.* He said, 'Go and look.' "

The clerk with whom plaintiff talked was called by her on the trial for cross-examination,* and in substance corroborated her claim as to what was said and done. Under the circumstances disclosed by the proofs, we think that the plaintiff at the time she engaged in the search for shoes of the kind that she wished to purchase was an invitee. She was entitled to follow the direction of the clerk. *McCrum* v. *Weil & Co.,* 125 Mich 297 (9 Am Neg Rep 59). In doing so she was engaged in a mission not merely for her own benefit, but for that of defendants as well. See, also, *Otto* v. *Hansen Wholesale Lumber Corporation,* 331 Mich 37.

Was there sufficient evidence of negligence on the part of the defendants to support the verdicts of the jury? It is undisputed that the trap door was left open by 1 of Brummel's employees, without the opening being protected either by the chain provided for that purpose or in any other manner. Plaintiff was directed by another employee to look for shoes that she might wish to purchase, no warning being given to her with reference to the trap door, of which, as she testified, she had no knowledge. The unsafe condition resulted not from the act of a third party but directly from the conduct of defendant Brummel's employee. Said defendant is bound by the active negligence. *Carpenter* v. *Herpolsheimer's Co.,* 278 Mich 697; *Hulett* v. *Great Atlantic & Pacific Tea Co.,* 299 Mich 59. For the safety of plaintiff defendant Brummel was charged with the observance of the duties discussed at some length in *Nezworski* v.

---

* See CL 1948, § 617.66 (Stat Ann § 27.420).—Reporter.

*Mazanec,* 301 Mich 43.   See, also, *Torma* v. *Montgomery Ward & Company,* 336 Mich 468, 476, 477.

Defendant Lahey's argues that the relation between it and the other defendant was such that it cannot be charged with liability for the negligence shown.   Reliance is placed on the lease into which it had entered with the assignor of Brummel's, by the terms of which the lessee was authorized to carry on, for the period of time therein named, the shoe business in Lahey's store.   The arrangement thus created was in effect at the time of the injuries to plaintiff.   The lessee thereunder agreed to install certain equipment and fixtures for the conduct of the business, while the lessor was to furnish heat, light, janitor service, local telephone service, and air conditioning and air cooling facilities as furnished to the rest of its store, together with sales books, wrapping paper, bags and twine.   All advertising was carried in the name of Lahey's.   All receipts from the lessee's business were required to be paid directly to the lessor to be held in a trust fund and accounted for to lessee after certain deductions therein provided, designated as rents.   Lahey's also reserved control over all credit sales and purchases.   It is particularly significant that the written undertaking gave to Lahey's the right to decide any controversies arising between lessee, or its employees, and its customers, relating to claims in connection with goods sold, and further reserved the right to determine the fitness and qualifications of any employee of lessee, with the right to insist upon dismissal of any such employee who might prove unsatisfactory to the lessor.

The shoe sale of which plaintiff desired to take advantage was advertised in the name of Lahey's. Plaintiff testified that she had not at the time heard of Brummel's.   It is also in evidence that the installation of the stairway and trap door was approved

by Lahey's, and that its employees occasionally used
the stairway as a means of ingress and egress to
and from the basement. Defendant Lahey's was
not prejudiced by the action of the trial court in
leaving to the jury the question whether plaintiff
was entitled to assert negligence on its part.

It is urged by both appellants that plaintiff failed
to establish her freedom from contributory negli-
gence, and that for such reason the motions for di-
rected verdicts should have been granted. In de-
termining the matter the testimony, as has been
repeatedly recognized by this Court, must be con-
strued as strongly as possible in plaintiff's favor.
As bearing on her conduct the following excerpts
from her testimony are significant:

"*Q.* What did you say?
"*A.* I said to him, 'I see you are busy and I am
in a hurry; do you think you have any shoes to fit
me?' He said, 'Why don't you go back and look for
yourself?' I said, 'How would I know which ones
are on sale?' and he said, 'The ones with the tags on.'

"Then I started looking. I did not look along the
line of this first shelving here right opposite the
chairs. I went over here (indicating) toward the
mezzanine. I went from where the clerk told me,
toward the back of the store toward the mezzanine,
where the shoes are. That would be along this line
of shelving shown in back of plaintiffs' exhibit 1.
The end of those open shelves was near the mez-
zanine, I don't know just how close, but it was up
towards the mezzanine floor. I don't remember that
I went to the first section, but I remember looking
over here and starting along here (indicating).
When I started looking at this section of the shelving
I started behind the chairs. I started looking in
this section of shelving near the mezzanine floor.
As I went along I noticed certain of the boxes had
tags on. When I started to look at the boxes the
mezzanine floor was on my right and I was facing

the row of shelving along the wall of the store, and looking there I could see the tags. I could see the size written on the tags. I had no trouble making out what was on the tags, it was very plain.

"I proceeded from my right towards the left, facing the row of shelving along that wall, looking up and down at the rows of boxes for these tags. My attention was closely taken up to see if I could find a pair of shoes that had my size. That is what I went back there for. As I proceeded in search of a box marked with my size, I was stepping sideways to my left.

"*Q.* And you continued along there from your right stepping sideways to the left, looking at those boxes on the shelves until you fell into the trap door, isn't that right?

"*A.* Yes. I heard somebody call loud, 'She is going to fall.'

"*Q.* Just then your left foot went into the hole and you fell?

"*A.* That is right.    *    *    *

"*Q.* When you got back there where you started to look at the boxes on the shelf, you glanced around?

"*A.* You glance around; yes, I did.

"*Q.* At that time, where did you glance?

"*A.* Down to the floor.

"*Q.* At the floor. Then after you had glanced around, when you glanced around, did you see this trap door open there?

"*A.* I did not.

"*Q.* After you had glanced around, you started looking at the boxes, is that right?

"*A.* That is right.

"*Q.* From that time you, you didn't glance around, did you?

"*A.* Not to my recollection.

"*Q.* From the time you made that 1 glance around, you proceeded to walk sideways to your left examining the boxes, is that right?

"*A.* Yes, sir.

"*Q.* As you approached the trap door, you didn't glance around again to see what was on the floor there, did you?

"*A.* No.

"*Q.* If you had, you could have seen that opening there, couldn't you?

"*A.* If I had looked down, but I never saw it open before. I didn't know it was there.

"*Q.* I will repeat the question and please answer my question. As you stepped sideways along there, facing this rack of shoe boxes to your left, looking in the shoe boxes, as you proceeded there from the time you started up near the mezzanine to just before the time you fell in, if you had looked to your left at any time, you could have seen that open trap door, couldn't you?

"*A.* I doubt it.

"*Q.* Why not?

"*A.* When you look at it, the carpeting and floor and everything looked alike.

"*Q.* This is the way it looked, wasn't it (indicating).

"*A.* Yes.

"*Q.* Now, you claim that as you walked along there, if you had glanced to your left on that floor, you claim you could not have seen that trap door?

"*A.* I don't claim I couldn't have.

"*Q.* You could have seen it just as plain then as you can see it in that plaintiffs' exhibit 3, couldn't you?

"*A.* If I had been looking for it, that is right.

"*Q.* If, as you stood here (indicating) you had glanced to your left, you could have seen that open trap door just as well at that time as you can see it now in plaintiffs' exhibit 3, couldn't you?

"*A.* If I had been looking for it.

"*Q.* If you had glanced to your left as you proceeded along there, you could have seen the open trap door that time just as well as you can see it here now in plaintiffs' exhibit 3, couldn't you?

"*A.* If I had looked right at it.

"*Q.* It would have been just as visible to you then as it is in this picture now, wouldn't it?

"*A.* If I had been looking for it probably. I don't know how else to put it."

In *Reedy* v. *Goodin,* 285 Mich 614, 620, it was said:

"Contributory negligence is ordinarily a question of fact for the jury, if there is one, unless the evidence so plainly and clearly establishes such contributory negligence that no reasonable man could come to any other conclusion. *Frary* v. *Grand Rapids Taxicab Co.,* 227 Mich 445. If plaintiff was in the exercise of ordinary care under all of the circumstances, he was not guilty of contributory negligence; and what is ordinary care is usually a question of fact. It is the care which an ordinarily prudent person would exercise under the same or similar circumstances."

The proofs in the case do not suggest any possible reason why plaintiff should have anticipated an opening in the floor. The following statement from the opinion in *Hulett* v. *Great Atlantic & Pacific Tea Co., supra,* 68, may well be repeated here:

"Plaintiff could not be said, as a matter of law, to be under obligation to look for an unsafe condition of the floor. Negligence will not be imputed to plaintiff for failing to look out for danger if, under the surrounding circumstances, she had no reason to suspect that such danger was to be apprehended. *Lawrence* v. *Bartling & Dull Co.,* 255 Mich 580; *Corey* v. *Hartel,* 216 Mich 675; *Brown* v. *Stevens,* 136 Mich 311 (16 Am Neg Rep 101); *Wine* v. *Newcomb, Endicott & Co.,* 203 Mich 445; Baldwin, Personal Injuries (2d ed), p 138, § 146. Plaintiff was not guilty of contributory negligence as a matter of law."

See, also, *Brown* v. *Stevens,* 136 Mich 311, 314 (16 Am Neg Rep 101); *Corfeld* v. *Douglas Houghton Hotel Company,* 324 Mich 459; *Kuhn* v. *King,* 330 Mich 49; *Cochran* v. *Pinto,* 333 Mich 91; *Torma* v. *Montgomery Ward & Company, supra; Thompson* v.

*F. W. Woolworth Company,* 100 Ind App 386 (192 NE 893); *Ralph* v. *MacMarr Stores,* 103 Mont 421 (62 P2d 1285). It may not be said in the instant case that plaintiff was guilty of contributory negligence as a matter of law in failing to make a closer inspection of the floor than her testimony indicates was made by her, in view of the fact that she had no reason to anticipate the presence of any unguarded opening in it. Whether she established that she exercised proper care for her own safety was for the determination of the jury. The trial court was not in error in submitting it as a factual issue.

Apparently in support of the claim that plaintiff did not fail to exercise due care in making observations for her own safety, counsel in her behalf offered the testimony of an expert on lighting arrangements and visual perception who testified, on the basis of experience in investigations and researches made in connection with industrial lighting problems, with reference to the situation in defendants' store. Defendants assert that such testimony was improperly received over their objections. However, we are not prepared to say that expert testimony of the character in question may not be of assistance to a jury under circumstances such as are involved in the case at bar, the weight to be given thereto resting in the sound judgment of the jury. Defendants were not erroneously prejudiced thereby.

By its requests to charge and by subsequent motion, defendant Lahey's raised in the trial court the claim that in the event of judgment against both defendants it should be held entitled to recover from Brummel's the amount of the damages found in favor of the plaintiffs. The trial judge refused to submit the matter to the jury, and denied the motion. Such refusal and denial are assigned as errors on appeal. Our consideration of the matter brings us to the conclusion that said assignments are not well found-

ed.  Whether defendant Lahey's, in the event that it is required to pay the judgments recovered by plaintiffs, or any portion thereof, has a right to reimbursement from the other defendant was not a proper issue in the present cases, and the trial court was not in error in so holding.

The judgments are affirmed, with costs to plaintiffs.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.