JONES v DAIMLERCHRYSLER CORPORATION

Docket No. 285099. Submitted December 8, 2009, at Detroit. Decided January 7, 2010. Approved for publication April 8, 2010, at 9:05 a.m.

Timothy and Chrystal Jones brought a negligence action against DaimlerChrysler Corporation in the Macomb Circuit Court for injuries sustained by Timothy Jones when he fell through a trapdoor on the mezzanine of one of defendant's plants while working for a contractor. The trapdoor, which was situated near the top of a staircase, had been opened moments before the accident by one of Timothy Jones's coworkers, who was unaware of his approach. The trial court, Mary A. Chrzanowski, J., granted defendant's motion for summary disposition of plaintiffs' premises-liability claim on the ground that defendant had no knowledge of the dangerous condition on its property and could not have discovered it between its creation and the accident. Plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court properly granted defendant's motion for summary disposition with respect to the open trapdoor because defendant had no duty to protect plaintiff from a temporary, unexpected hazardous condition of which defendant had no notice and that was created by employees of a contractor to whom defendant had given control over the work site.

2. The trial court erred by granting defendant's motion for summary disposition with respect to plaintiffs' claim that the location and design of the trapdoor made it a dangerous condition, which presented a question of fact. This claim is properly categorized as one alleging premises liability rather than nuisance, and the evidence indicates that the dangers presented by the trapdoor were not open and obvious.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. NEGLIGENCE — PREMISES LIABILITY — DANGEROUS CONDITIONS.

The creation of a temporary, unexpected dangerous condition by employees of a contractor that has control over a work site does

not give rise to premises liability where the owner of the work site had no knowledge or notice of the condition.

2. NEGLIGENCE — PREMISES LIABILITY — DANGEROUS CONDITIONS — LOCATION AND DESIGN OF TRAPDOOR.

A claim that the location and design of a trapdoor makes it a dangerous condition presents a factual question that precludes summary disposition.

*Sachs Waldman, Professional Corporation* (by *George T. Fishback*), for plaintiffs.

*Cardelli, Lanfear & Buikema, P.C.* (by *Anthony F. Caffrey III* and *Lisa C. Walinske*), for defendant.

Before: METER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM. In this premises liability action, plaintiffs[1] appeal by right following the trial court's grant of defendant's motion for summary disposition under MCR 2.116(C)(10) and dismissal of plaintiffs' complaint with prejudice. We affirm in part, reverse in part, and remand for further proceedings.

I. SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff was injured on May 31, 2006, when he fell through a trapdoor opening[2] in a mezzanine walkway in

---

[1] Because plaintiff Chrystal Jones brings a derivative loss of consortium claim, references in this opinion to "plaintiff" refer to plaintiff Timothy Jones.

[2] The trapdoor sits to the right of a staircase leading to the mezzanine walkway made of open metal grating. The trapdoor is hinged at the edge of the grating under the railing surrounding the stairwell so that when it is opened, the grating swings up and rests against the railing (where it can be held with a hook), creating an open hole without barriers on the three sides along the walkway. Thus, by coming up the stairs and making two 90-degree turns, a person faces an open edge of the hole with the left and far edges also open, and the lifted grating to the right, leaning against the railing.

defendant's Sterling Heights plant. At the time of the accident, plaintiff was working on a renovation project at the plant and was employed by Durr Systems (Durr) as a millwright. Defendant hired Durr to change over a multitude of conveyor components that are used on the paint line of the assembly plant. Plaintiff testified that he was the supervisor for the millwrights working on the project and had been working on-site for roughly two to three weeks, between six and seven days a week. Before this assignment, plaintiff had been to this plant on five or six occasions to do preliminary work for this job. Defendant's plant was shut down while Durr was completing the work, and plaintiff did not report to an employee of defendant during his time working at the plant.

One of the conveyors that the Durr employees were working on could only be accessed from the mezzanine. Plaintiff indicated that he was familiar with the area within defendant's plant where he was working, including the mezzanine area. Plaintiff testified that during his time on this job, he had been on the mezzanine often, climbing the stairs roughly three or four times a day before the incident in order to check the progress of the work being done. Plaintiff acknowledged that he knew there were grates that could be removed in the mezzanine area because he had seen some removed in other parts of the plant. Plaintiff was also familiar with similar grate systems in other plants he had worked in. Plaintiff knew that the Durr employees would need to lift or hoist some products to the mezzanine, and he stated that occasionally the products are lifted through removed sections of the grating.

On the night of the incident, plaintiff walked up the stairs to the mezzanine in order to distribute paychecks. According to plaintiff, Mike Perry, the iron-

worker foreman, walked up the stairs behind plaintiff. Regarding the fall, plaintiff testified that he "went up the staircase and went to my right as I got to the top of the staircase, and that's all I remember . . . the next thing I know, I was laying on the floor." Plaintiff did not recall seeing anyone on the mezzanine before his fall and he did not recall looking down. Plaintiff was wearing safety glasses and a hard hat at the time he fell. When plaintiff awoke, he was laying on the ground. Plaintiff was told after the fall that the "Perry boys," a group of cousins that worked as ironworkers for Durr, may have moved a section of grating from the floor.

One of the Perry boys, Lonnie Perry, worked as an ironworker at Durr on the date of the incident. Lonnie stated that he heard plaintiff tell his cousin, Mike Perry, that a section of the conveyor would need to be lifted through the grating. Lonnie testified:

> And, Mike told us, me and Randy Perry, to go up the stairwell to see if we could get the grating open so we could shoot a small piece of conveyor end in up though the grating. And I looked and I seen there wasn't . . . no safety tape or anything such as that, so I told the steward that we needed some red tape. And, he said he didn't have any, but he would go look. So, then I and Randy walked up the stairwell, identified the piece of grating where we needed to shoot the rig through with the piece. And, it was all phosphated, all gluey, pretty sticky; didn't believe we could ever get it open. Randy was standing in front of me; I bent over at the—the left edge of it; I put my pry bar in there and I got it to come open, surprisingly, and found out it was, actually, even on hinges. And, just—I no more than opened it, my—I was looking towards my cousin Randy, his eyes got big, I heard the grating rattle; I looked and [plaintiff] had walked right by me, right into the hole and all I could see was his eyes of terror going to the ground. And, it was just that quick. [Plaintiff] had been walking and he had followed me right up the stairwell. I didn't realize it. And, he had a handful of checks in his hand and he was just

> getting ready to go down the conveyor to hand out checks to—to his employees, his millwrights. And, as soon as I heard the rattle, I seen his eyes and I seen checks flying everywhere . . . and I watched him go to the ground and hit the gang box. He bounced off a set of torches and a gang box and laid there unconscious.

Lonnie said that the grating was open "two tenths of a second, possibly" before plaintiff stepped into the hole. Michaeline Cartwright, who worked as a safety coordinator for Durr from 2004 to 2006, documented that the grating had been opened "for less than ten seconds."

Cartwright testified that on the night of the incident, she spoke to one of defendant's employees, Nick Juncaj, who was temporarily working as the UAW safety representative. Juncaj testified that he filled in for the regular safety representative for five weeks, beginning on May 19, 2006. According to Cartwright, Juncaj stated that there had been two other accidents at the same location within the past three years. However, at his deposition, Juncaj denied knowing of any prior accidents and he did not recall telling Cartwright of other injuries in this area. Juncaj testified that he had worked at the Sterling Heights plant since 1991, full time since 1994. Pat Christie, defendant's safety supervisor, testified that the hinged sections on the mezzanine have been used "time and again." Christie also indicated that he had no knowledge of other accidents with people falling through the hinged section of the mezzanine floor.

Plaintiffs originally sought relief asserting claims of both premises liability, based on defendant's ownership of the premises, and contractor liability, under the retained control doctrine, on the theory that defendant had retained control over the renovation project. See *Ormsby v Capital Welding, Inc*, 471 Mich 45, 60; 684 NW2d 320 (2004). However, plaintiffs stipulated to

dismissal of this latter claim, as well as its claim predicated on the inherently dangerous activity doctrine, and proceeded only on the claim predicated on defendant's ownership of the premises.

Defendant filed a motion requesting summary disposition. After considering the evidence, the trial court granted defendant's motion, holding:

> In the instant matter, the dangerous condition was created when plaintiff's co-employees raised a grate on the mezzanine-level walkway, creating an unwarned and unguarded hole through which someone could fall. The record is devoid of any evidence suggesting defendant knew or should have known that plaintiff's co-employees would create such a dangerous condition.
>
> Moreover, the record clearly established the dangerous condition existed for less than ten seconds before plaintiff fell through the opening. There is no evidence suggesting defendant knew of the dangerous condition in the short time of its existence; the short time also precludes a finding that defendant could have discovered the dangerous condition before plaintiff encountered it.
>
> The mere fact that similar accidents may have occurred in the past does not establish defendant had knowledge of [the fact] that an actual dangerous condition, the open grate, existed when plaintiff fell. To the contrary, the grate was obviously kept closed to prevent injuries. While defendant would clearly have had knowledge of the potential for danger from the prior accidents, defendant would not have knowledge that that actual dangerous condition existed or would be permitted to exist without some sort of protection (e.g., warning tape or barricade) when plaintiff fell. Hence, plaintiff has not shown further discovery stands a fair chance of uncovering factual support for his position to avoid summary disposition.

Plaintiffs now appeal, challenging the grant of summary disposition as well as the trial court's subsequent denial of their motion for reconsideration.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). For a motion brought under MCR 2.116(C)(10), we review the pleadings, admissions, and other evidence in the light most favorable to the nonmoving party and, if there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law. *Id.* at 466-467. A trial court's action on a motion for reconsideration is reviewed for an abuse of discretion. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008).

## III. ANALYSIS

As an initial matter, we note that a subcontractor's employee who is injured on a work site may bring claims for both premises liability and contractor liability. See, e.g., *Ghaffari v Turner Constr Co*, 473 Mich 16; 699 NW2d 687 (2005); *Perkoviq v Delcor Homes-Lake Shore Pointe, Ltd*, 466 Mich 11; 643 NW2d 212 (2002). Therefore, plaintiffs' concession that they had no contractor liability claim did not automatically preclude a premises liability claim. To the extent that defendant asserted the contrary, we reject its argument.

To establish a premises liability claim, "a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006).

Plaintiffs first argue that the trial court erred by concluding that defendant had not created the danger-

ous condition and could not be held liable for plaintiff's injuries. Plaintiffs argue that defendant created the danger by placing the trapdoor in the mezzanine walkway. Defendant argues that plaintiff's coworkers created the condition when the trapdoor was opened and no barricade was placed around the opening. We conclude that there are two separate potential dangerous conditions on defendant's premises for which it could be held liable. Although the trial court appears to have based its ruling on the conclusion that the dangerous condition was the open trapdoor, at oral argument, counsel for plaintiffs indicated that the dangerous condition was not the open trapdoor, per se, but rather its location in the walkway and where it was hinged. Because these are distinct claims, see *Bluemer v Saginaw Central Oil & Gas Serv, Inc*, 356 Mich 399; 97 NW2d 90 (1959), we address them separately.

### A. THE OPEN TRAPDOOR

Looking first at defendant's liability for the open trapdoor as the dangerous condition, we conclude that the trial court properly granted summary disposition on this issue.

"It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury . . . ." *Nezworski v Mazanec*, 301 Mich 43, 56; 2 NW2d 912 (1942) (quotation marks and citation omitted). In this case, there is undisputed evidence that one of plaintiff's coworkers opened the trapdoor moments before plaintiff fell. Defendant did not open the section and leave it in a dangerous condition. Rather, the open trapdoor was a construction site hazardous condition that was created by one of plaintiff's co-employees. We believe that defendant had

no duty to protect plaintiff from this condition based on *Young v Delcor Assoc, Inc*, 477 Mich 931 (2006).

In *Young v Delcor Assoc, Inc*, unpublished opinion per curiam of the Court of Appeals, issued June 27, 2006 (Docket No. 266491), rev'd 477 Mich 931 (2006), the plaintiff was a subcontractor's employee who stepped on a wall panel that had been laid down over one-third of a second-floor stairwell opening that was neither covered nor barricaded. The plaintiff knew that there was a stairwell opening under the wall, but thought the wall panel was a solid section. The wall was in two sections that separated when the plaintiff stepped on the panel, and the plaintiff fell more than 20 feet through both the second and first floor stairwell openings into the basement. *Id.* at 2. The trial court concluded that there was an outstanding factual question as to whether the defendant had possession and control over the premises at the time of the plaintiff's injuries, "a necessary element of both claims." *Id.* at 4. However, it concluded that the premises liability claim failed as a matter of law because "either the opening itself or the opening partially covered by the wall panel" was open and obvious or "presented an unexpected hazard for which [defendant] did not have notice as even plaintiff did not realize that the wall panel would not support his weight." *Id.* at 4-5. The plaintiff appealed the summary disposition on both the premises liability and contractor liability claims. The Court of Appeals panel affirmed summary disposition on the contractor liability claim, but reversed on the premises liability claim, concluding:

> [T]he allegedly dangerous condition for which plaintiff was attempting to hold [defendant] liable . . . as the premises possessor, was the stairwell sans stairs. That is the allegedly unreasonable risk of harm that [defendant] should have known existed on its property, not the jointed

> wall panel that plaintiff's coworker placed partially over
> the opening just before plaintiff fell. And, we agree with the
> trial court that the open, unbarricaded stairwell was an
> open and obvious condition. . . . However, the issue is
> whether there is evidence that creates a genuine issue of
> material fact that [defendant] should have anticipated
> harm despite plaintiff's knowledge of the stairwell sans
> stairs, i.e., if special aspects of the condition made the open
> and obvious risk unreasonably dangerous. We conclude
> that [defendant] should have anticipated such harm . . . .
> [*Id.* at 6-7.]

It concluded that there was a genuine issue of material
fact "regarding whether there were special aspects of
the stairwell that gave rise to a uniquely high likelihood
of harm or severity of harm if confronted and, there-
fore, [defendant] had a duty to undertake reasonable
precautions to protect invitees, like plaintiff, from that
risk." *Id.* at 8.

Our Supreme Court unanimously peremptorily re-
versed the panel and reinstated the trial court's grant of
summary disposition on the premises liability claim.
*Young*, 477 Mich at 931. Citing *Perkoviq*, 466 Mich at
18-20, it held:

> The defendant premises owner *did not have a duty* to
> protect the plaintiff, an employee of an independent con-
> tractor hired to perform construction work on the owner's
> premises, from the construction site hazardous condition
> that contributed to the plaintiff's injury. Moreover, the
> temporary hazardous condition was created by the inde-
> pendent contractor, the defendant premises owner had no
> notice of the condition, and the condition was not unrea-
> sonably dangerous . . . . [*Young*, 477 Mich at 931 (emphasis
> added).]

Here, defendant had no notice that the grate was being
opened; none of its employees was present and it was
uncontested that the trapdoor had been open at most 10

seconds before the accident occurred.[3] See *Moore v Traverse City Masonic Bldg Ass'n*, 324 Mich 507, 521; 37 NW2d 457 (1949) (holding that the plaintiff failed to prove "that the door in question was open a sufficient length of time before the accident to charge defendant with knowledge that the door was open"). Additionally, it was an independent contractor that created the temporary hazardous condition. Because Durr employees opened the trapdoor in order to get equipment through, the open trapdoor was a "construction site hazardous condition that contributed to the plaintiff's injury." *Young*, 477 Mich at 931. We find *Young* controlling on this point, and hold that defendant had no duty to protect plaintiff from the open trapdoor.

Plaintiffs argue that *Muth v W P Lahey's, Inc*, 338 Mich 513; 61 NW2d 619 (1953), provides that liability may be imposed on defendant based on Durr employees' actions. We disagree. In *Muth*, a customer who went into a store to buy shoes fell through a trapdoor that was left open by a shoe department employee. *Id.* at 516. At the time, the shoe department was operated by another company pursuant to a lease. *Id.* Our Supreme Court upheld the imposition of liability on the store owner, even though it was the shoe department company's employee who had left the door open. *Id.* at 519-520. In *Bluemer*, 356 Mich at 409-411, however, our Supreme Court distinguished *Muth*, and indicated that the imposition of liability on the store owner was not

---

[3] Plaintiffs' allegations regarding additional accidents do not provide evidence of notice of the open trapdoor; rather, they are more appropriately applied to whether defendant had notice of whether the location of the trapdoor or how it was hinged was a dangerous condition. We note, however, that plaintiffs' allegations of notice that are premised on an accident that occurred in 1988, before defendant owned the facility, cannot be sustained absent some evidence that defendant acquired knowledge of that accident.

based simply on the fact that the defendant owned the store, but based on the store owner's essentially complete control over the shoe department company's business activities, including employee hiring. *Id.* at 409-410. By contrast, where a lessor does not conduct business or direct its tenant's business, liability is imposed on the lessee, not the property owner. *Id.* at 411-412. See also *Brown v Std Oil Co*, 309 Mich 101; 14 NW2d 797 (1944) (holding that the owner of a gas station was not liable for the injuries to an employee of the lessee gas station because the lease did not reserve to the owner the right to exercise control over the business or operations of the lessee on the premises). Here, defendant had turned over control of the construction site to Durr, and there was no evidence that defendant was exercising control over the construction site. Accordingly, the negligent acts of Durr employees in opening the trapdoor without proper barricading could not be imputed to defendant.

### B. THE PRESENCE, LOCATION, AND DESIGN OF THE TRAPDOOR

Alternatively, plaintiffs argue that defendant was liable because it created a dangerous condition by leaving the trapdoor[4] in a place that invitees were free to use, by leaving the trapdoor hinged in a manner that left a completely unguarded hole in the grating when open, and by failing to give any warning regarding its existence or to provide barricades or other safeguards when the trapdoor was open. We conclude that this claim is distinct from the dangerous condition of the open trapdoor and that plaintiffs have shown an outstanding question of fact on this issue, which precludes summary disposition.

---

[4] The evidence indicated that the trapdoor was not designed or placed by defendant, but rather existed before defendant purchased the building.

In *Bluemer*, 356 Mich at 410-416, our Supreme Court concluded that the liability of a property owner for the dangerousness of a trapdoor based on "its use, location, and other circumstances" was a question separate and apart from its liability based on the lessee's employee's negligence in leaving the trapdoor open, and that liability could be imposed for the former. *Bluemer* cites two cases that we find similar to the instant case:

> In *Dahl* v. *Glover*, 344 Mich 639 [75 NW2d 11 (1956)], which was an action for damages resulting from plaintiff falling into a manhole in a sidewalk in front of defendants' premises, the proofs indicated that plaintiff stepped on the cover of the manhole, and that the cover tilted upward and rolled away. Plaintiff's fall resulted. It was the theory of the plaintiff that the cover was defective. The trial court in submitting the case to the jury referred to different types of nuisances, including such resulting by reason of circumstances and surroundings, leaving it to the jury to say whether under the facts in the case and inferences to be drawn therefrom the manhole and manhole cover constituted a menace dangerous to the public and therefore a nuisance. The charge as given was approved by this Court and judgment for the plaintiff was affirmed.

> In *Brown* v. *Nichols*, 337 Mich 684 [60 NW2d 907 (1953)], plaintiff was injured as the result of being struck by a door to an establishment owned and operated by the defendants, which door was so constructed that it swung out over a public sidewalk. The trial court did not submit the case to the jury on the theory of a nuisance in fact because of the consequences that might result from the use of a door so constructed and operated. In reversing the case and remanding it for a new trial, it was held:

> "The question as to what constitutes a nuisance is one of law for the court, but it is for the jury to decide whether a particular act or structure or use of property, which is not a nuisance *per se*, is a nuisance in fact and whether an alleged nuisance is the cause of the losses or injuries

complained of and to what extent such losses or injuries are
attributable to the nuisance." [*Bluemer,* 356 Mich at 413-
414.]

Although these cases describe the issue as a nuisance
claim, we do not believe that plaintiffs were required to
allege a nuisance in order to claim that the location of
the trapdoor and its design (i.e. where the hinges were
placed) created a dangerous condition. Rather, we be-
lieve that such claims fall under the category of pre-
mises liability. See Michigan Law and Practice, § 1, p 97
(noting that "several Michigan decisions use the term
'nuisance' liability to refer to what is essentially pre-
mises liability"); see also *Kilts v Kent Co Bd of Super-
visors,* 162 Mich 646, 651; 127 NW 821 (1910) (defining
a nuisance as "involv[ing], not only a defect, but threat-
ening or impending danger to the public" and conclud-
ing that the plaintiffs' claims for faulty tower construc-
tion sounded in negligence, not nuisance).

Because we read *Bluemer* as using "nuisance" to
refer to a premises liability claim rather than a true
nuisance claim, we conclude that whether the use or
location of a trapdoor makes it a dangerous condition is
a factual question for the jury. *Bluemer,* 356 Mich at
413-416. Furthermore, given the evidence that none of
Durr's employees was aware that the grating was
hinged and the photographs that indicate the hinges are
hidden, we conclude that this condition is not open and
obvious. Accordingly, the trial court erred by granting
summary disposition on plaintiffs' premises liability
claim as to the location of the trapdoor and how it was
hinged. Therefore, we reverse the trial court's grant of
summary disposition, as to the question of trapdoor
placement and hinging only, and remand for trial.[5]

---

[5] We take no position as to whether the placement of the trapdoor or its
design (i.e. where the hinges were placed) was a negligent or dangerous

### IV. CONCLUSION

We affirm the trial court's grant of summary disposition as to the open trapdoor, reverse the grant of summary disposition as to the location of the trapdoor and the placement of its hinges, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having fully prevailed.

condition. We are only holding that a question of fact exists on this issue. Additionally, because we find an error in the granting of summary disposition, we need not consider the question of whether the trial court erred by denying plaintiff's motion for reconsideration.